The TRIAX COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 626–85C.

United States Claims Court.

May 25, 1990.

Denver C. Snuffer, Salt Lake City, Utah, for plaintiff.

Sharon Y. Eubanks, with whom were Stuart M. Gerson, Asst. Atty. Gen., and David M. Cohen, Director, Commercial Litigation Branch, Civ. Div. U.S. Dept. of Justice, Washington, D.C., for defendant; Stephanie Cates–Harman, Dept. of the Navy, Washington, D.C., of counsel.

## OPINION

SMITH, Chief Judge.

On July 21, 1989, the court dismissed the Triax Company's appeal from the contracting officer's final decision denying its claim, on the ground that the individuals who had certified the claims on behalf of Triax did not meet the requirements of FAR 33.207(c)(2). The case is presently before the court on Triax's motion for reconsideration. For the reasons given below, the court's order of dismissal is vacated.

## FACTS

On August 5, 1982, the Navy awarded contract N62467–80–C–0099 to Triax at a firm fixed price of $4,688,400. The contract called for the renovation of military housing units at the Naval Air Station in Millington, Tennessee.

At the preconstruction conference, Navy officials informed Triax that there would be some changes to the contract. It was agreed that Triax would be given a list of additional work items to be performed on a given unit, on the day before work was to begin on that unit. Triax began renovation on the first increment of housing on November 1, 1982, and over the term of the contract, Triax performed some 22,000 additional work items. Triax and the Navy negotiated several modifications to the contract, providing for additional compensation for increased materials and labor. However, a dispute arose regarding whether modification No. 7 constituted an accord and satisfaction with respect to all previous changes, or whether Triax retained the right to seek additional compensation for delays caused by the changes.

On April 1, 1985, Triax submitted a certified claim to the contracting officer (CO), requesting a $2.8 million upward adjustment in the contract price. The claim was signed by Ronald Carter, who at the time was the Secretary of the Triax Company, as well as Triax's attorney. The claim was denied by the CO on September 17, 1985. Triax filed the present direct access appeal of the CO's denial of the claim on October 22, 1985.

On June 19, 1987, Triax submitted a second certified claim to the CO, this time requesting an additional $4.1 million. This claim was signed by William Simmons, Financial Vice President of Triax.

After extensive discovery and pretrial briefings on evidentiary issues, Judge Napier held a four-week long trial in early 1989. During trial, Judge Napier raised the issue of whether either claim was properly certified under section 6(c) of the Contract Disputes Act, 41 U.S.C. § 605(c) (1988 ed.), and asked that the parties file post-trial briefs addressing the issue. Specifically,

Judge Napier was concerned that the certified claims submitted by Carter and Simmons did not meet the requirements of FAR 33.207(c)(2), which provides:

> If the contractor is not an individual, the certification shall be executed by—
>
> (i) A senior company official in charge at the contractor's plant or location involved; or
>
> (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

48 C.F.R. § 33.207(c)(2) (1988).[1]

The parties filed their post-trial briefs on March 31, 1989; replies were filed on April 24, 1989. On July 7, 1989, the Federal Circuit issued its decision in *Ball, Ball & Brosamer*, 878 F.2d 1426 (Fed.Cir.1989), which construed FAR 33.207(c)(2). On July 21, 1989, relying heavily on the Federal Circuit's decision in *Ball, Ball & Brosamer*, Judge Napier dismissed Triax's claim upon his own motion, on the ground that under FAR 33.207(c)(2), neither Mr. Carter nor Mr. Simmons could submit certified claims on behalf of Triax. *Triax Co. v. United States*, 17 Cl.Ct. 653 (1989). The current motion for reconsideration was timely filed.[2]

## DISCUSSION

It is well-settled that the submission of a properly certified claim to the CO is a jurisdictional prerequisite to a direct-access appeal of the CO's denial of the claim. Contract Disputes Act, 41 U.S.C. § 605(c); *Thoen v. United States*, 765 F.2d 1110 (Fed.Cir.1985); *Paul E. Lehman, Inc. v. United States*, 673 F.2d 352, 230 Ct.Cl. 11 (1982). Subject-matter jurisdiction can be questioned at any time, *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), and no consensual action of the parties can confer jurisdiction on a federal court where none exists according to preexisting law,

*California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

Triax asserts in its motion for reconsideration that the certifications at issue met the test of FAR 33.207(c)(2). Alternatively, Triax asks that it at least be allowed to supplement the record, to include "bench memos" that Judge Napier apparently considered when he dismissed the case, but which were not made part of the record.

RUSCC 59(a)(1) provides:

> A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

A motion for reconsideration is addressed to the discretion of the trial court. *Eyre v. McDonough Power Equipment*, 755 F.2d 416 (5th Cir.1985) (construing Fed.R.Civ.P. 59); *Grumman Aircraft Engineering v. Renegotiation Bd.*, 482 F.2d 710 (D.C.Cir.1973), *rev'd on other gds.*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1974) (construing Fed.R.Civ.P. 59). A motion under rule 59 is not to be viewed as an additional chance for a dissatisfied litigant to sway a judge. *Frito–Lay of Puerto Rico, Inc. v. Canas*, 92 F.R.D. 384 (D.Puerto Rico 1981). "A motion for a new trial in a nonjury case or a petition for rehearing should be based upon manifest error of law or mistake of fact." Wright & Miller, *Federal Practice and Procedure*, Civil § 2804.

Allowing Triax an opportunity to be heard on the issue of the validity of the certifications at this stage is appropriate, for three reasons. First, only the issue of

---

1. Judge Napier based his decision on the 1988 version of the regulation, but the applicable clause in Triax's contract was identical. See 32 C.F.R. § 1–314(L)(2) (1983).

2. Judge Napier left the bench in August of 1989. The case was subsequently reassigned to the Chief Judge.

whether Carter's certification was valid was briefed. The post-trial briefs make it clear that neither party was aware of Judge Napier's concerns about the validity of Mr. Simmons' certification. Indeed, in its "Conclusions of Law," filed after trial, the government states that Mr. Simmons' certification "was effective and binding upon Triax."

Second, Triax could not have anticipated that its claim would be dismissed some six months after trial, on the basis of an appellate decision that was not even issued until after post-trial briefing was completed. Triax did not have a chance to develop the record in light of the *Ball, Ball & Brosamer* decision.

Third, and most significant, Judge Napier made an error of law in construing FAR 33.207(c)(2). The test of section 33.207(c)(2) is disjunctive; that is, the certifying individual must fit into either one of the two categories specified in subsection (c)(2). Judge Napier appears to have read subsection (c)(2) conjunctively, concluding that for a certification to be proper, the certifying individual must fit into both categories specified in subsection (c)(2).

The ruling in *Ball, Ball, & Brosamer*, upon which Judge Napier relied in dismissing Triax's claim, explained that in requiring certification of contractor claims greater than $50,000, Congress wanted to discourage the filing of false claims; in Congress' judgment, the best way to do this was to require personal certification. The court stated that the Mr. Meek, who had certified the claim for the contractor and who was the contractor's chief cost engineer, was neither a "senior company official in charge at the contractor's plant or location" (subsection (c)(2)(i)) nor "an officer or general partner with overall responsibility for the conduct of the contractor's affairs" (subsection (c)(2)(ii)). 878 F.2d at 1428. The court stated that FAR 33.-207(c)(2) merely "identifies the individuals within the contractor's organization who properly may act for the contractor in certifying." 878 F.2d at 1429.

The Interior Board of Contract Appeals in *Ball, Ball, & Brosamer*, 88–3 BCA (CCH) ¶ 20,844 (1988), *aff'd*, 878 F.2d 1426 (Fed.Cir.1989), focused on a different aspect of the certification, namely, that Mr. Meek had no authority to bind the contractor:

> [J]ust as a contractor should not have to guess at its peril upon whom it may rely, among the government's many servants, when a contract is about to be signed or [changed] ..., the government should not be forced to guess whether the act of the private institutional signer in certifying a claim is, or is not, one for which the corporation, legally and without unnecessary litigation, can readily be held accountable.
>
> *  *  *  *  *  *
>
> For the Corporation's Chief Cost Engineer ... to attempt to perform legal acts on behalf of [the contractor, a] Joint Venture [between the corporation and a partnership,] without any form of warrant, and then to argue that he was orally authorized to do so, strains credulity.... It is also clear that, under the FAR clause [33.207], corporate contractors are permitted to choose between two reasonable certification alternatives: either they may provide their senior onsite project managers with the necessary express authority, or they may vest the claim certification responsibility in their general corporate officers.

88–3 BCA (CCH) ¶ 20,844, at 105,431.

Defendant here asserts that neither of Triax's certified claims was valid[3] under the *Ball, Ball & Brosamer* rule. Defendant also relies on three Claims Court decisions: (i) *Donald M. Drake Co. v. United States*, 12 Cl.Ct. 518 (1987), where the court ruled that a certified claim signed by the project manager was invalid, since the contractor had not given the project manager authority to approve the claim before it was submitted; (ii) *Romala Corp. v. United States*, 12 Cl.Ct. 411 (1987), where the court ruled that an attorney who was expressly authorized to submit a certified claim on behalf of contractor did not fall

**3.** Defendant did not challenge the validity of Mr. Simmons' certified claim at trial.

into either category of FAR 33.207(c)(2), and thus, the certification was invalid; and (iii) *Al Johnson Constr. v. United States,* 19 Cl.Ct. 732 (1990), where the court held invalid a certification executed by an individual who appeared to lack authority to certify the claim, and who did not fall within either category of FAR 33.207(c)(2).

■ From *Ball, Ball & Brosamer, Drake, Romala,* and *Al Johnson Constr.,* one can distill a simple two-part rule: the individual certifying a claim on behalf of a corporate contractor must fall within one of the two categories described in FAR 33.207(c)(2), *and* he or she must have authority to bind the contractor. Here, the government does not dispute, and the court has no reason to doubt, that both Carter and Simmons had authority to submit the certified claims on behalf of Triax. Thus, the inquiry is reduced to whether Carter and/or Simmons fall within one of the two categories of individuals described in FAR 33.207(c)(2).

The government cites *Ball, Ball & Brosamer* for the proposition that a contractor's chief cost engineer cannot certify a claim on behalf of the contractor. This is not what *Ball, Ball & Brosamer* says; a contractor's chief cost engineer can certify a claim *so long as* he or she falls within one of the two categories of FAR 33.207(c)(2), and *so long as* he or she has authority to bind the contractor. In *Ball, Ball & Brosamer,* as a matter of fact, not law, the certifying individual had neither attribute.

■ Carter's certified claim on behalf of Triax satisfies the two-step test distilled from *Ball, Ball & Brosamer.* In holding that Carter's certification was invalid, Judge Napier stated:

> Ronald Carter, secretary of the company and attorney of Triax at the time he signed the first claim, was not in charge at the contractor's plant, even though he may be considered a senior company official at the time. Plaintiff's statement that Carter was the corporate secretary and had overall responsibility on the claim when he certified it does not establish that FAR requirements that he have "direct responsibility over the project" were met. Indeed, plaintiff does not dispute defendant's statement that during the course of contract performance, Carter never had any dealings with Navy personnel. There is no testimony that Carter even visited the worksite, nor did anyone from Triax ever represent that Carter possessed any particular authority on behalf of Triax.

17 Cl.Ct. at 658.

From the excerpt above, and nothing more, it seems that Carter does not fall under FAR 33.207(c)(2)(i), since he was not in charge at Triax's plant or at the worksite. However, there is nothing to indicate that Judge Napier considered whether Carter met the requirement of subsection (c)(2)(ii). As secretary of Triax, Carter was an officer of the contractor, and presumptively had overall responsibility for the conduct of Triax's affairs. Thus, Carter's certification was valid under FAR 33.-207(c)(2)(ii). Judge Napier's suggestion that a corporate officer must have "direct responsibility over the project" is a misreading of the regulation; corporate officers need only have "overall responsibility" for the contractor's affairs.

■ The government cites no case where a certification executed by a corporate officer was held invalid, and the court declines to make this the first such case. As a general matter, the party invoking the jurisdiction of a federal court bears the burden of proving the facts necessary to establish jurisdiction. *See, e.g., Stifel v. Hopkins,* 477 F.2d 1116 (6th Cir.1973) (plaintiff bears burden of showing that parties are citizens of different states in diversity case). However, once plaintiff comes forward with a *prima facie* showing of facts necessary to establish jurisdiction, the burden shifts to defendant to show that jurisdiction is not proper. *See Gregg v. Louisiana Power and Light,* 626 F.2d 1315 (5th Cir.1980) (plaintiff's place of birth is presumed domicile, and burden of overcoming such presumption shifts to defendant when defendant challenges diversity jurisdiction); *Messinger v. United Canso Oil and Gas,* 80 F.R.D. 730 (D.Conn.1978) (once plaintiff

corporation makes *prima facie* showing of its principal place of business, burden of establishing that another state would be more appropriately considered plaintiff's principal place of business shifts to defendant).

The burden-shifting approach employed when diversity jurisdiction is challenged lends itself well to resolving a challenge to claim certification under FAR 33.-207(c)(2)(ii). Triax has made a *prima facie* showing that Messrs. Carter and Simmons are general officers of Triax under Utah law, *see* Utah Code Annotated § 16–10–45 (1953), and as such, the court presumes that they have overall responsibility for the conduct of Triax's affairs. Defendant has made no showing that either individual is a unique corporate officer under either state law or under Triax's bylaws, *lacking* such responsibility.[4]

As the Federal Circuit noted in *Ball, Ball & Brosamer*, FAR 33.207 is unambiguous. 878 F.2d at 1429. As such, the regulation must be susceptible of comprehension by the contractor. Accepting defendant's reading of the regulation would render it ambiguous; businessmen and businesswomen of average or even extraordinary intelligence would be forced to play a guessing game when deciding who should certify a claim. This cannot be what the drafters of the regulation intended.[5]

Defendant maintains that determining the proper individual to certify claims on behalf of a corporate contractor under its theory is a simple matter. The facts of this case seem to belie that assertion. Clearly the drafters of section 33.207(c)(2) meant for there to be *at least one person* within every contractor's organization who can certify claims on behalf of the contractor. In the present case, the claims were prepared and submitted after Triax had demobilized its workforce from the Tennessee site; only administrative tasks at Triax's home office in Utah remained. It may not have been clear to Triax at the time it submitted its claims whether there was anyone who could have satisfied subsection (c)(2)(i) ("senior company official in charge *at the plant or location involved*") (emphasis supplied).[6]

Thus, it was reasonable for Triax to assume that certification under subsection (c)(2)(ii), which relates to corporate officers and general partners, was its only course, yet defendant has not suggested a workable test which Triax might have employed when deciding which officer should have certified. The plain language of the regulation, "*an* officer or general partner ..." (emphasis supplied), suggests that there is, or could be, more than a single person competent to certify under subsection (c)(2)(ii), otherwise, the drafters of the regulation would have said "*the* officer or general partner ...".

The regulation cannot mean that only a person with authority to countermand every action taken by any other individual in the contractor's organization may certify a claim, as defendant suggested at oral argu-

---

**4.** Plaintiff suggests the following reading of section 33.207(c)(2)(ii): the certifying individual must be either an officer of the contractor, OR a general partner having overall responsibility for the conduct of the contractor's affairs. The "overall responsibility ..." clause, according to plaintiff, modifies "general partner," but not "officer." While the court finds such an interpretation of the regulation plausible, the court need not decide whether plaintiff's suggested reading is correct in order to sustain plaintiff's position.

**5.** An avowed purpose of the Contract Disputes Act is to foster the prompt, efficient resolution of disputes between contractors and the government. Pub.L. 95–563, Sen.Rep. 95–1118, 95th Cong., 2d Sess., *reprinted in 1978 U.S.Code Cong. & Admin.News* 5235. With this purpose in mind, the court declines to interpret section

22.307(c)(2) in such a way as to require a contractor to consult a lawyer in order to determine who may certify a claim.

**6.** The court does not mean to suggest that once a contractor has demobilized its workforce from a construction site, it has forever lost the option of certifying under subsection (c)(2)(i). However, after reviewing the record, it appears that Triax believed, at the time it submitted its claims, that it was certifying under subsection (c)(2)(ii), the corporate officer provision. As discussed below, the claims of Messrs. Carter and Simmons also satisfied subsection (c)(2)(i), if "plant or location involved" is interpreted to mean that following demobilization, Triax's home office is considered to be the "location involved."

ment. If that is what the drafters of subsection (c)(2)(ii) had in mind, they would have simply said "chief executive officer." One should also consider the hypothetical case of a partnership with two partners, one of whom handles administrative tasks, while the other handles the practical aspects of production or construction, as the case may be. Neither partner has authority to unilaterally countermand the decisions of the other. Where such a contractor has already demobilized or completed production, the partners would reasonably conclude that certification under subsection (c)(2)(i) was impossible. If the test for the proper certifying individual under subsection (c)(2)(ii) is whether the person has authority to countermand the decisions of any other person in the organization, then there would be no way for the contractor to submit a properly certified claim. Again, this cannot be what the drafters of the regulation intended.

Defendant suggests that *all* management-level personnel could sign off on a certified claim. At least one of the signatories would be the proper individual, defendant contends. While there is some support for defendant's suggested approach in the case law, *see Todd Bldg. v. United States,* 13 Cl.Ct. 587 (1987) (certified claim signed by contractor's general manager held valid, notwithstanding the fact that the signature of a clerical worker, who had no authority to bind the contractor, also appeared on the claim), defendant's suggested approach would make a mockery of the certification process. Reducing claim certification to the level of circulating a petition around the contractor's office cannot be what Congress intended. Moreover, forcing contractors to resort to such mass certification would be tantamount to saying that the regulation is hopelessly ambiguous, yet the Federal Circuit has explicitly stated otherwise.[7]

■ Simmons' certification was also valid. Simmons was corporate vice president, that is, an officer of the corporation (sub-

section (c)(2)(ii)). Judge Napier emphasized in his order of dismissal that Simmons had no direct authority or management over the Memphis project; this only supports the conclusion that Simmons does not fall under subsection (c)(2)(i). Judge Napier's questioning of Simmons shows that Judge Napier combined the requirements of subsections (c)(2)(i) and (c)(2)(ii):

Q. [The court] What is your responsibility as vice president of financial affairs?
A. [Mr. Simmons] My responsibilities are all banking relationships, in charge of all accounting, all relationships with the auditors, I'm responsible for seeing that payrolls are—I sign all the certified payrolls after reviewing the payroll data and everything prepared by my accounting clerk and everything that relates to the accounting function and financial nature of the company.
Q. What overall responsibility did you have, if any, for the conduct of the contracts [sic] affairs, that is the Memphis project?
A. The Memphis project, Your Honor, my duties now are much more expanded than when the Memphis project was going on. At that time I still had the, all the accounting responsibilities and financial relationships with the bank, but *I had no direct authority as far as managing the job or anything like that.*
17 Cl.Ct. at 659 (emphasis in original).

Judge Napier concluded: "The certification of the second Triax claim by Simmons renders it improperly certified under FAR requirements that a senior company official in charge at the contractor's plant must certify a contractor's claim." *Id.* Of course, the FAR only sets forth *as one alternative,* not an ironclad requirement, that the certifying individual be in charge at the contractor's plant.

Moreover, Simmons avers in an affidavit executed on August 3, 1989, that he and Mr. Nixon, Triax's president, "have equal authority to direct any aspect of Triax's affairs." Simmons also states that both he

---

7. The court does not mean to deride defendant's arguments. Counsel for each party have represented their respective clients ably, and the court views arguments such as the one rejected here as an indication of clever and zealous advocacy.

and Carter had authority for completing the project following demobilization. According to Simmons, when the certifications were made, "Mr. Carter and I were the senior officials of The Triax Company in direct charge" of the project. Thus, according to the representations of Simmons, he and Carter meet both tests of subsection (c)(2).[8]

The evidentiary value of a post-dismissal statement by someone within the contractor's organization was not squarely addressed in *Ball, Ball & Brosamer*. Judge Bruggink in *Al Johnson Constr.* chose to give little weight to the contractor's "after-the-fact descriptions" of the certifying individual's duties because the descriptions conflicted with other documents in the record, and because the descriptions did not adequately address whether the certifying individual was a "senior company official in charge at the plant or location involved." Here, by contrast, there is no reason for the court to discount the statements of Mr. Simmons.

■ There remains the issue of whether to allow defendant to take an interlocutory appeal from this order under 28 U.S.C. § 1292 (1988 ed.). In resolving this issue, the court must consider whether the issue to be appealed is a controlling question of law within the meaning of the statute, *i.e.,* whether resolution of the question could potentially contribute to the termination of a large spectrum of cases at an early stage. *Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir.1961). Put another way, the court must consider whether a review of its order would have precedential value in a large number of cases. *von Bulow v. von Bulow*, 634 F.Supp. 1284, 1312 (S.D.N.Y.1986). In addition, the court should take into account the probability that its decision is in error, "as well as the extent to which additional time and expense may be saved by an interlocutory appeal." *Kennard v. United Parcel Service*, 531 F.Supp. 1139, 1149 (E.D.Mich.1982) (citation omitted).

■ After consideration of the foregoing factors, the court concludes that defendant

should be permitted, should it so choose, to pursue an interlocutory appeal of this order. In so concluding, the court is not unmindful of Triax's interest in avoiding piecemeal litigation, and in bringing this matter to a close as expeditiously as possible.

Nevertheless, the need of defendant, the private bar, and the Claims Court and for direction on the issue of proper certification of claims under the CDA must take precedence. Defendant has represented to the court that a large number of cases before both the Claims Court and the agency boards of contract appeals will be affected by the present order. The court's own experience corroborates this assertion; the court has seen in its chambers alone three cases in which the government has moved for dismissal based upon the Judge Napier's interpretation of *Ball, Ball & Brosamer*. Because the issue is that of subject matter jurisdiction, an appellate ruling on the question presented by this order could potentially contribute to the termination of a large number of cases at an early stage.

Additionally, time and expense may be saved by allowing an interlocutory appeal. The judge who heard four weeks of testimony on the merits left the bench without making alternative findings on the merits, in the event that he was wrong in concluding that the court was without jurisdiction. The court believes that whatever course it might take to resolve the merits, whether that be holding a second trial, holding a minitrial aimed at settlement, or working from the existing trial record with key witnesses testifying a second time, the merits should not be reached until a binding ruling on jurisdiction is rendered.

## CONCLUSION

For the foregoing reasons, the court's July 21, 1989 order of dismissal, 17 Cl.Ct. 653, and the judgment entered the same day, are VACATED.

The jurisdictional issue is a controlling question of law as to which there is sub-

---

**8.** Statements in an affidavit by Mr. William L. Nixon, president of Triax, would reinforce this

conclusion, but for the fact that the affidavit is unsigned.

stantial ground for difference, and the court is of the view that an immediate appeal may materially advance the ultimate termination of this litigation. Pursuant to 28 U.S.C. §§ 1292(b), 1292(c)(1), and 1292(d)(2), defendant may request, within ten days of the entry of this order, that the United States Court of Appeals for the Federal Circuit entertain, in its discretion, an interlocutory appeal from this order.

It is so ordered.

