**RELIANCE INSURANCE COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 27–88C.**

United States Claims Court.

May 8, 1991.

Paul R. Howell, Costa Mesa, California, for plaintiff. David J. Pikulin, of counsel.

Samuel C. Watkins, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen and Asst. Director Thomas W. Petersen, for defendant. Sandra C. McFeeley, Rowena E. Dodson, U.S. Postal Service, of counsel.

## OPINION

LYDON, Senior Judge:

This government contract case is before the court on defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, pursuant to RUSCC 12(b)(1), which plaintiff opposes. At issue is whether plaintiff, Reliance Insurance Company (Reliance), properly certified its claim for an equitable adjustment to the contract before submitting it to the contracting officer for final decision. Reliance maintains that its claim was properly certified by an assistant vice-president of bond claims, who was also a bond claims regional manager. After careful consideration of the parties' submissions, oral argument having been heard on May 7, 1991, the court grants defendant's motion to dismiss for lack of jurisdiction.

## FACTS

The following facts pertinent to the jurisdictional issue now before the court are not in dispute. The contractor Sonaz Construction Company (Sonaz) entered into a contract with the United States Postal Service (Postal Service) on April 13, 1984, to build a new postal facility at the Diamond Bar station in Pomona, California (Diamond Bar project), for the sum of $1,296,560. On April 18, 1984, Sonaz, as principal, executed

performance and payment bonds with plaintiff Reliance Insurance Company (Reliance), as surety, for the amount of the contract.

The construction contract contains the following "Claims and Disputes" clause:

d) For contractor claims of more than $50,000, the contractor shall submit with the claim a certification that: (i) the claim is made in good faith; (ii) supporting data are accurate and complete to the best of the contractor's knowledge and belief; and (iii) the amount requested accurately reflects the contract adjustment for which the contractor believes the Postal Service is liable.... If the contractor is not an individual, *the certification shall be executed by a senior company official in charge at the contractor's plant or location involved; or by an officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.* ... (emphasis added)

On May 7, 1984, Sonaz began work on the Diamond Bar project. During the performance of the contract, Reliance became aware that Sonaz was having financial difficulties when Sonaz sent Reliance a telegram. In the telegram, Sonaz indicated it was having financial difficulties immediately affecting two projects bonded by Reliance, and that those difficulties could extend to three other projects bonded by Reliance, one of which was the Diamond Bar project. After investigating the financial problems of Sonaz, Reliance sent a telegram to the Postal Service on June 21, 1984, advising it to withhold contract funds from Sonaz. Sonaz claims it was forced to stop work on the Diamond Bar project because the Postal Service thereafter withheld contract funds on the advice of Reliance. Sonaz left the Diamond Bar project on June 25, 1984 and did not return to it. Although representatives of Sonaz, Reliance and the Postal Service subsequently tried to make financial arrangements so Sonaz could complete the postal facility contract, those efforts were unsuccessful, and the Postal Service terminated Sonaz for default on September 6, 1984.

Thereafter, Reliance assumed its obligation as surety to complete the project, and executed a takeover agreement with the Postal Service on November 20, 1984. Under the takeover agreement, Reliance agreed to complete the Diamond Bar project in accordance with the terms of the original construction contract between Sonaz and the Postal Service. Also on November 20, 1984, Reliance entered into a completion agreement with a construction contractor, John R. Hundley Construction, Inc. (Hundley). Both the takeover agreement and the completion agreement were executed by R.M. Laursen (Laursen) on behalf of Reliance. Laursen was a bond claims representative at that time in Reliance's Tacoma (Federal Way), Washington regional office. Gary Judd (Judd) assisted Laursen with the Diamond Bar project and other Sonaz claims. When Laursen left Reliance, Judd assumed responsibility for the Diamond Bar project. Throughout performance of the contract, Reliance's correspondence to Hundley and the Postal Service concerning the Diamond Bar project was signed by either Laursen or Judd, as bond claims representatives.

During the course of Reliance's performance of the contract, a dispute arose between Reliance and the Postal Service concerning extra work required to complete the project. On April 8, 1986, Reliance and Hundley submitted a claim to the contracting officer for an equitable adjustment of $394,865 and a time extension of ninety-seven days. The claim was accompanied by plaintiff's purported certification as follows:

We hereby certify that the claim as prepared by Global Construction Services, Inc. and presented by our attorney George Mitchel, of Booth, Mitchel, Strange & Smith,

a. [sic] Made in good faith.

b. That the supporting data is accurate and complete to the best of our knowledge.

c. That the amount requested accurately reflects the contract adjustment for which we believe the Government (USPS) is liable.

d. That the undersigned is an officer of Reliance Insurance Company and is duly authorized to execute this Certificate.

The statement was signed "H.H. Stebbins, Assistant Vice–President—Reliance Insurance Company." Mr. H.H. Stebbins (Stebbins) worked for Reliance in its Tacoma, Washington office for twenty years until his retirement in 1989. At the time Reliance submitted its claim to the contracting officer, Stebbins was an assistant vice-president of bond claims in Reliance's Tacoma, Washington office, and he was also Bond Claims Manager for Reliance's western region, which covered ten or eleven states, including California, the location of the Diamond Bar project.

At all times relevant to this dispute, Reliance's corporate headquarters were located in Philadelphia, Pennsylvania, but its operations were managed through three regional offices in Philadelphia, Kansas City and Tacoma. The western region was managed by the Tacoma office and covered ten or eleven states, including California, the location of the Diamond Bar project. Reliance provided typical insurance services as well as fidelity and surety bonding. Bonds represented six to seven percent of Reliance's premiums. The bond department was divided into claims and underwriting.

In the Tacoma office, Stebbins' managerial authority was limited to making decisions concerning bond claims for the western region. Another manager (ostensibly Vincent Fasano) handled decisions relating to bond underwriting for the western region. It is not clear from the record whether Stebbins was in complete charge of operations at the Tacoma office, or whether Stebbins shared that responsibility with the Bond Underwriting Manager. The record does indicate that, by 1989, Fasano had been promoted to Vice–President (Claims) at the Philadelphia headquarters.

Stebbins supervised seven to nine bond claims representatives, including Laursen and Judd. According to Stebbins, he reported directly to the vice-president in charge of bond claims in Philadelphia, Mr.

Ruck, who made national managerial decisions on bond claims. Ruck reported to George Holbrook, senior vice-president in charge of bonds, who made managerial decisions on a national level for bond claims and underwriting. Holbrook reported to the president or executive officer in charge of Reliance.

As assistant vice-president of bond claims in 1986, Stebbins had the authority in the western region to pay or compromise claims against Reliance, and to authorize the prosecution of claims by Reliance. Stebbins' authority in connection with bond claim matters in the western region had no upper dollar limit. On the advice of Reliance's legal counsel, Stebbins made the decision to pursue the claim against the Postal Service on the Diamond Bar project. Reliance's claim was actually prepared by an outside consultant, John Gronlund of Global Construction Services.

Joseph Cipriani (Cipriani) was the contracting officer's representative on the Diamond Bar project when Sonaz began construction in May of 1984, and he became the contracting officer on the project in February of 1985. Cipriani recalls no meetings or dealings with Stebbins during the performance of the contract after Reliance took over. Cipriani believed that Laursen or Judd was responsible for the Diamond Bar project. Cipriani did recall that Stebbins executed contract modification no. 4, dated November 10, 1986, on behalf of Reliance. Stebbins never visited the Diamond Bar project site; Laursen visited the site occasionally, and Judd visited the site once.

On June 12, 1986, the Diamond Bar project was substantially complete. On January 14, 1987, the contracting officer denied the claim of Reliance and Hundley for an equitable adjustment to the contract. Reliance and Hundley appealed the contracting officer's denial of their claim by filing a direct access suit in this court on January 14, 1988, but the parties later agreed to dismiss Hundley as a plaintiff. Reliance seeks damages of $263,099.43 and time extensions up to 197 days, alleging unreasonable delay in terminating Sonaz,

extra work, defective specifications and breach of contract. Plaintiff alleges jurisdiction under section 10(a)(1) of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 *et seq.*

On January 8, 1990, the government filed a motion for summary judgment on three counts, and simultaneously filed a motion to stay discovery pending the court's ruling on the summary judgment motion. On February 9, 1990, the court granted defendant's motion to stay discovery. In an unpublished opinion dated May 4, 1990, the court denied defendant's motion for partial summary judgment because of material factual disputes. Thereafter, defendant filed its motion to dismiss raising the certification issue. Plaintiff vigorously opposes defendant's motion to dismiss.

## DISCUSSION

■ Both parties agree that this case is controlled by the provisions of the CDA. The CDA requires that contractors certify all claims over $50,000:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1). Certification of contractor claims over $50,000 is a jurisdictional prerequisite to an action brought by a contractor in this court or before an agency board of contract appeals. *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 579 (Fed.Cir.1991); *Ball, Ball & Brosamer, Inc. v. United States*, 878 F.2d 1426, 1428–29 (Fed.Cir.1989); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir.1985); *Milmark Servs., Inc. v. United States*, 231 Ct.Cl. 954, 956 (1982). "[C]ertification plays a serious role in the statutory

scheme because it triggers a contractor's potential liability for a fraudulent claim under section 604 of the [CDA]. It is also designed to discourage the submission of unwarranted contractor claims and to encourage settlement." *Skelly & Loy v. United States*, 231 Ct.Cl. 370, 376 n. 11, 685 F.2d 414, 418 n. 11 (1982); *see also Grumman, supra,* 927 F.2d at 579; *Ball, Ball & Brosamer, supra,* 878 F.2d at 1429; *Romala Corp. v. United States,* 12 Cl.Ct. 411, 412 (1987); *T.J.D. Servs., Inc. v. United States,* 6 Cl.Ct. 257, 262 (1984). In *Grumman, supra,* the Federal Circuit explained that "Congress wanted to hold the contractor personally liable, and it considered the best way to do this would be to require contractors to personally certify their claims." *Grumman, supra,* 927 F.2d at 579 (quoting *Ball, Ball & Brosamer, supra,* 878 F.2d at 1429).

When the contractor is a corporate entity, as Reliance is here, both the Postal Contracting Manual and the construction contract itself provide guidance with regard to those corporate officials who may properly certify a claim on behalf of a corporate contractor:[1] "(1) a senior company official in charge at the contractor's plant or location involved, or (2) an officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs." In addition, the individual must have authority to bind the contractor. *Ball, Ball & Brosamer, supra,* 878 F.2d at 1428; *Triax Co. v. United States,* 20 Cl.Ct. 507, 511 (1990).

■ Plaintiff's position is that Stebbins was, at the time of certification, a corporate officer who meets the CDA's certification requirement. Alternatively, plaintiff argues that, even if its claim was not properly certified, plaintiff has substantially complied with the certification requirements, and therefore its complaint should not be dismissed. Plaintiff also op-

---

1. The Postal Contracting Manual (PCM) governed Postal Service procurements at all times relevant to this dispute. 39 U.S.C. § 401; 39 C.F.R. § 601.100. Moreover, the Federal Circuit recently upheld a challenge to the validity of a Federal Acquisition Regulation containing language substantially identical to that quoted above in the PCM and the construction contract regarding the proper official to certify a claim. *United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 578–79 (Fed.Cir.1991).

poses dismissal of its complaint on public policy grounds.[2]

■ Plaintiff makes a general assertion that Stebbins, as an officer of Reliance, was properly qualified to certify the claim. Plaintiff does not attempt to meet either prong of the certification test, but merely asserts that, under Claims Court precedent, *any* officer of a corporation may properly certify a claim, citing *Triax Co. v. United States*, 20 Cl.Ct. 507, 511 (1990). Indeed, this may have been so until February 27, 1991, when the Federal Circuit held, in a precedential opinion, that the senior vice-president and treasurer of a corporation with "overall responsibility for [the corporation's] financial affairs" was not a proper officer to certify a claim. *Grumman, supra*, 927 F.2d at 580-81. As the Claims Court recently noted, "[a]fter *Grumman* the law on certification is that the certifying official must be a senior company official with primary responsibility for the execution of the contract and physically present at the location, or a chief executive officer, or one of equivalent status, as the official with overall responsibility for the contractor's conduct of affairs." *KDH Corp. v. United States*, 23 Cl.Ct. 34, 42 (Cl.Ct.1991). Clearly, the mere fact that Stebbins was a corporate officer of Reliance does not enable him to certify claims, without specifically meeting either prong of the certification test. In its supplemental brief, plaintiff responds to *Grumman* by arguing that Stebbins was a proper individual to certify because he was a "senior company official in charge at the plant or location involved."

## A. Senior Company Official in Charge at the Plant or Location Involved

Under the first prong of the certification test, plaintiff must show that Stebbins was a "senior company official in charge at the plant or location involved." Reliance does not deny that Stebbins, who worked in the Tacoma, Washington office, never visited the site of the Diamond Bar project in Pomona, California. Rather, plaintiff takes issue with defendant's assertion that the "location involved" means the work site at which the contract is performed, in this case, the Diamond Bar project in Pomona, California. Plaintiff argues that "location involved" refers to the location of the primary contract activity. According to plaintiff, the "primary contract" was the takeover agreement between Reliance and the Postal Service, and the takeover agreement was administered by Stebbins at the Taco-

---

**2.** In a submission to the court dated February 14, 1991, plaintiff raised several objections of an evidentiary nature to defendant's brief in support of its motion to dismiss. Plaintiff renewed some of those objections in its brief in opposition to defendant's motion. Specifically, plaintiff objects to the declaration of Joseph Cipriani (Cipriani), the contracting officer, because the declaration was not executed under penalty of perjury, as required by 28 U.S.C. § 1746. Cipriani's declaration states "I declare, pursuant to 20 [sic] (obviously a typographical error) U.S.C. Section 1746, that the foregoing statements "are true and correct to the best of my knowledge, information and belief." The declaration does not expressly include the "under penalty of perjury" language of 28 U.S.C. § 1746. However, plaintiff attacks no part of the declaration *as incorrect or untrue*, and plaintiff does not renew its objection in its brief in opposition to defendant's motion. Under the circumstances, the court will not disregard Cipriani's declaration, as plaintiff suggests, despite its technical shortcomings.

In addition, plaintiff objects to portions of the declaration of Marcia McNulty, a postal inspec-tor, as inadmissible hearsay. The court concludes, however, that this declaration falls within Federal Rule of Evidence 803(8)(C), the "report of a public office or agency" exception to the general rule excluding hearsay.

Finally, plaintiff attacks portions of defendant's brief supporting its motion to dismiss, on the basis that defendant's brief contains "burdensome, irrelevant and immaterial matters," that are not necessary to decide the motion, pursuant to RUSCC 83.1(a)(4). Plaintiff urges the court to disregard defendant's entire brief, because defendant is attempting "to try the case on this motion" by including an extensive recital of facts that are only relevant, according to plaintiff, to the merits of the case. Although defendant may have included more facts in its brief than are necessary to decide this motion, the court is not concerned with the merits of the case here, only with the narrow certification issue as it impacts the court's jurisdiction. The court does not feel the harsh sanction of total disregard of defendant's brief is warranted under the circumstances.

ma, Washington office.[3]

In *Grumman, supra,* the Federal Circuit makes it clear that "senior official in charge at the plant or location involved" means "that the certifying official have both primary responsibility for the execution of the contract *and* a physical presence at the location of the primary contract activity." *Grumman, supra,* 927 F.2d at 580 (emphasis in original). In *Grumman,* the Federal Circuit found that the senior vice-president and treasurer of the corporation could not meet this test because he was not "physically present at the plant or location involved in the *performance* of the contract." *Grumman, supra,* 927 F.2d at 580 (emphasis added). *See also KDH Corp., supra,* 23 Cl.Ct. at 42; *National Surety Corp. v. United States,* 20 Cl.Ct. 407, 411 (1990) (suggesting "plant or location involved" means the job site); *Al Johnson Constr. Co. v. United States,* 19 Cl.Ct. 732, 735 (1990) (same). Reliance does not contend that Stebbins was physically present at the Diamond Bar project in Pomona, California where the contract was performed. Moreover, the Postal Service dealt exclusively with Laursen and Judd on the construction project. The contracting officer does not recall ever meeting or dealing with Stebbins on the project, although he notes that Stebbins executed one contract modification on behalf of Reliance. Clearly, Reliance cannot meet the first prong of the certification test. Since Reliance may comply with the certification requirement by meeting either the first or the second prong of the certification test, the court will next consider Reliance's arguments with regard to the second prong.

### B. Officer Having Overall Responsibility for Contractor's Affairs

The alternative requirement for certification is that it be executed by "an officer or general partner having overall responsibility for the conduct of the contractor's affairs." This second prong is more subjective, and therefore, more difficult to apply than the first prong. The "overall responsibility" requirement was strictly construed in *Grumman,* where the Federal Circuit found that the certifier could not meet this test because even though he was the senior vice-president and treasurer of the contractor, he had only overall responsibility for the contractor's financial affairs. *Grumman, supra,* 927 F.2d at 580–81.

Plaintiff asserts that "overall responsibility" means whether the involved company official can bind the contractor as to third parties in transactions within the scope of the contractor's activities, citing *Cox Construction Co. v. United States,* 21 Cl.Ct. 98, 101 (1990). There is no question here that Stebbins had the requisite authority to make managerial decisions with regard to bond claims in Reliance's western region. The record is not persuasively clear, however, as to whether Stebbins had the authority to bind Reliance with regard to the claim he purportedly certified. In *Triax, supra,* the court drew a clear distinction between the "overall responsibility" prong and the certifier's authority to bind the contractor. In so doing, the court distilled a two-part rule from Federal Circuit and Claims Court case law: "The individual certifying a claim on behalf of a corporate contractor must fall within one of the two categories [for CDA certification], *and* he or she must have authority to bind the contractor." *Triax, supra,* 20 Cl.Ct. at 511 (emphasis in original). Reliance's attempt to read the "overall responsibility" prong to mean "authority to bind the contractor" is simply wrong. *See Ball, Ball & Brosamer, supra,* 878 F.2d at 1428 (the fact that chief cost engineer had authority to sign and certify claims does not mean he is authorized to execute claim certifications under the regulations); *see also KDH Corp., supra,* 23 Cl.Ct. at 40; *Al Johnson*

---

**3.** In support of this argument, plaintiff relies on *Transamerica Ins. Co. v. United States,* 6 Cl.Ct. 367 (1984). In *Transamerica,* the court upheld a certification by relying on a conclusory affidavit from the certifier, an attorney for the surety, stating that he possessed the requisite authority to certify under the regulations. Reliance points out that, in *Transamerica,* there was no indication that the certifying attorney had any supervisory capacity at the construction site. However, nearly seven years later, the development of case law, culminating in *Grumman,* places *Transamerica's* viability in serious question.

*Constr. Co. v. United States,* 19 Cl.Ct. 732 (1990); *Donald M. Drake Co. v. United States,* 12 Cl.Ct. 518 (1987).

*Cox Construction,* upon which plaintiff relies, is arguably distinguishable because, in that case, the court was faced with determining whether certification of a claim by the president of one of two corporations involved in a joint venture was sufficient to bind the joint venture itself, absent an express statement in the certification that the certifier was certifying the claim on behalf of both corporations. *Cox Construction, supra,* 21 Cl.Ct. at 101–02.

As noted above, Reliance is a large corporation with three regional offices. The evidence indicates that Stebbins may not have been in charge of Reliance's affairs even at the Tacoma regional office. At most, he had overall responsibility for the claims division of the bonds department for the western region at the Tacoma office. He had no authority over the bonds underwriting division at the Tacoma office. At oral argument, plaintiff conceded that, in light of *Grumman,* plaintiff cannot satisfy the "overall responsibility" prong of the certification requirement. Plaintiff argues that if Stebbins was not the proper official to certify the Diamond Bar claim, then, in effect, only the chief executive officer (CEO) of Reliance could meet the "overall responsibility" test. The record shows that several Reliance officials in the Philadelphia main office were most probably qualified to serve as certifying officers of Reliance. Thus, certification by the CEO was not the only option available to Reliance in this regard. Moreover, in *Grumman,* the Federal Circuit rejected a similar argument, finding it to be without support in the certification requirement. *Grumman, supra,* 927 F.2d at 581.

 The burden is on plaintiff to establish that it has met the jurisdictional requirement of proper certification. *Grumman, supra,* 927 F.2d at 581. This Reliance has failed to do. At oral argument, plaintiff expressed uncertainty as to which of several company officials at Reliance's headquarters in Philadelphia might be deemed appropriate for certification pur-

poses. Perhaps one of Reliance's vice-presidents at the Philadelphia headquarters would possess the requisite "overall responsibility" necessary for certification, even if he is not familiar with Reliance's claim on the Diamond Bar project. As the board of contract appeals suggested in *Ball, Ball & Brosamer:* "if a general corporate officer does not have sufficient facts to make the necessary certification, then perhaps he should get the facts before making the certification, just as he should get the facts before signing away the corporation's rights in a claims release." *Ball, Ball & Brosamer, Inc.,* 88–3 BCA (CCH) ¶ 20,844 at 105,431, 1988 WL 69261 (1988), *aff'd,* 878 F.2d 1426 (Fed.Cir.1989).

C. Substantial Compliance with the Certification Requirement

 In the alternative, plaintiff argues that, even if its claim was not properly certified, Reliance has substantially complied with the certification requirement, since the certification was executed by Stebbins as an assistant vice-president. In order for defendant to require strict compliance with the certification requirement, according to plaintiff, defendant must show that Reliance was trying to escape potential liability for a fraudulent claim. In support of its position, plaintiff relies solely on *Cox Construction, supra. Cox Construction* is arguably distinguishable, however. In that case, the court found the contractor had substantially complied with the certification requirement because the claim sufficiently referenced the joint venture, even though the president of only one of the two corporations involved in the joint venture had signed the certification. In finding the single signature on the joint venture's certification sufficient to constitute substantial compliance, under the particular circumstances of that case, the court noted that there was no showing that either of the joint venturers was attempting to escape potential liability. *Cox Construction, supra,* 21 Cl.Ct. at 102. Although the doctrine of substantial compliance has been applied to certain aspects of the certification requirement, such as the language of the certification, no board or

court has applied the doctrine with regard to the identity of a proper certifier, other than *Cox Construction* in the context of a joint venture. The requirement of certification is, as noted above, a prerequisite to the court's exercise of jurisdiction over Reliance's contract claim. Jurisdictional requirements must be strictly construed, and cannot be waived by a party's substantial compliance with such requirements. *See Paul E. Lehman, Inc. v. United States*, 230 Ct.Cl. 11, 15–16, 673 F.2d 352, 355 (1982).

### D. Public Policy Considerations

■ Finally, plaintiff argues that public policy considerations weigh against dismissal of its complaint for improper certification. Plaintiff correctly states that two goals of certification are to discourage the submission of unwarranted contractor claims and to encourage settlement. According to plaintiff, allowing its claim to proceed would not result in an unwarranted claim, nor would dismissal of its complaint facilitate settlement. Plaintiff seems to view the certification requirement as a mere "technicality" that the court can waive as it sees fit on a case-by-case basis. However, the purpose of certification is more than a technical trap for the unwary. Certification protects the government from fraudulent claims, and it relieves the government from the expense and risk of ascertaining that the person certifying the claim is indeed authorized to do so. *See Ball, Ball & Brosamer, supra*, 878 F.2d at 1428–29. Any delay in the proceedings in this case can be blamed on plaintiff's failure to ascertain the proper corporate official to certify its claim.

Since the certification requirement is jurisdictional, Reliance's complaint must be dismissed for lack of jurisdiction. *See National Surety Corp. supra*, 20 Cl.Ct. at 410. In reaching its decision, the court was greatly influenced by the Federal Circuit's holding in *Grumman.* Accordingly, the court is of the view that its decision herein comports with the *Grumman* holding.[4]

Although the contracting officer has already issued a final decision on Reliance's claim, that decision is a legal nullity since the claim was not properly certified. *National Surety, supra*, 20 Cl.Ct. at 410 (citing *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1384 (Fed.Cir.1983)). The proper procedure for a contractor whose claim is dismissed for lack of jurisdiction due to improper certification is to properly certify the claim, resubmit it to the contracting officer, and if denied relief, appeal to either the board of contract appeals, 41 U.S.C. § 606, or directly to this court, 41 U.S.C. § 609. *See Grumman, supra*, 927 F.2d at 581; *Skelly & Loy, supra*, 231 Ct.Cl. at 377, 685 F.2d at 419; *Romala, supra*, 12 Cl.Ct. at 413–14. For this reason, Reliance's complaint will be dismissed without prejudice.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint is granted. The Clerk is directed to enter judgment dismissing plaintiff's complaint without prejudice. No costs.

---

**4.** The certification requirement has produced a slew of legal decisions and has generated a good deal of uncertainty in the federal contracting area. It would seem that a simple contract requirement at time of award that the parties agree on the identity of the appropriate certification official, giving due consideration to the CDA certification provision and existing case law, might well serve to lessen the number of cases which have to deal with the issue. This would be so since it would be expected that the government would not agree on the contractor's certifying official unless it is satisfied the official met the requirements of the CDA and applicable case law. While this suggestion might not serve to eliminate the problem completely, it most probably would serve to lessen litigation on the certification issue. Ultimately, changes in the law and/or governing regulations may be necessary to alleviate completely the uncertainty and litigiousness seemingly inherent in the certification requirement.