**JOSEPH MORTON CO., INC.**

v.

**The UNITED STATES.**

No. 107–82C.

United States Claims Court.

Nov. 18, 1983.

---

John B. Tacke, Washington, D.C., for plaintiff; Hudson, Creyke, Koehler & Tacke, Washington, D.C., of counsel.

Richmond I. McKay, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

MEROW, Judge:

This matter comes before the court on defendant's motion for leave to file an amended answer and counterclaims, and plaintiff's opposition thereto. Defendant seeks leave to file an amended answer asserting counterclaims for breach of contract and for excess reprocurement costs. The counterclaims stem from the default termination in 1979 of plaintiff's right to perform a 1976 contract for the construction of certain buildings at the United States Department of Agriculture Animal Disease Center located on Plum Island, New York.

### Background

The opinion filed July 12, 1983 in this matter sustained the default termination of plaintiff's right to perform the Plum Island construction contract involved. Judgment

was not entered to await briefing on the issue of whether defendant's proposed counterclaims for excess reprocurement costs and for breach of contract can or should be asserted in this action. In this regard, defendant has instituted litigation against plaintiff's performance bond surety, Seaboard Surety Company, in the United States District Court for the Eastern District of New York, Civil Action No. CV–82–0518, to recover damages incurred in obtaining the completion of the defaulted Plum Island construction contract. Seaboard Surety Company has impleaded plaintiff in this District Court action, as a third-party defendant, asserting an indemnity claim against plaintiff covering any sums Seaboard may be held liable to pay the United States under its Miller Act (40 U.S.C. § 270a et seq.) performance bond for the Plum Island contract. The Agriculture Department buildings covered by the contract on which plaintiff defaulted have not, as yet, been completed so that the total amount of any excess reprocurement cost incurred by the government has not been determined. To date, no contracting officer decision has been issued setting forth a claim against plaintiff for either breach of contract damages or for excess reprocurement costs stemming from the default of plaintiff's right to perform the Plum Island contract.

### Discussion

Plaintiff opposes the filing of defendant's proposed counterclaims on several grounds.

First, plaintiff treats the opinion of July 12, 1983 as, in effect, dismissing its Claims Court complaint and urges that no counterclaim may be filed absent an extant complaint in this court.

Counterclaim jurisdiction in the Claims Court rests on 28 U.S.C. §§ 1503, 2508. This counterclaim jurisdiction requires, as a prerequisite, the existence of a claim filed against the United States within the jurisdiction of the Claims Court. *Mulholland v. United States,* 175 Ct.Cl. 832, 846, 361 F.2d 237, 245 (1966). Absent the prior filing by a plaintiff of a claim against the United States within the jurisdiction of the Claims Court, any counterclaim then asserted by the United States under 28 U.S.C. §§ 1503, 2508 (1976) could, conceptually, encounter a constitutional objection because the Claims Court cannot provide a trial by jury. However, in *McElrath v. United States,* 102 U.S. 426, 430–40, 26 L.Ed. 189 (1880), it was ruled, with respect to the exercise of jurisdiction by an Article I court under the provisions now codified as 28 U.S.C. §§ 1503, 2508, that:

There is nothing in these provisions which violates either the letter or spirit of the Seventh Amendment. Suits against the government in the Court of Claims, whether reference be had to the claimant's demand, or to the defence, or to any set-off, or counterclaim which the government may assert, are not controlled by the Seventh Amendment. They are not suits at common law within its true meaning. The government cannot be sued, except with its own consent. It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits. It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States. Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the government in the special court organized for that purpose, he may be met with a set-off, counterclaim, or other demand of the government, upon which judgment may go against him without the intervention of a jury, if the court, upon the whole case, is of opinion that the government is entitled to such judgment. If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the government to the exercise of the privilege. Nothing more need be said on this subject.

*See also Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946); *Frantz Equipment Co. v. United*

*States,* 122 Ct.Cl. 622, 105 F.Supp. 490 (1952).

■ Thus, if it is determined that a complaint filed in the Claims Court does not state a claim within the limited jurisdiction provided to this court, the dismissal of the complaint for lack of jurisdiction carries with it the dismissal of any counterclaim filed in the matter by the United States. *Mulholland v. United States,* 175 Ct.Cl. 832, 846, 361 F.2d 237, 245 (1966); *Somali Development Bank v. United States,* 205 Ct.Cl. 741, 751–52, 508 F.2d 817, 822 (1974).

■ In the instant matter, plaintiff filed a complaint setting forth a contract claim against the United States clearly within the jurisdiction of the Claims Court under 28 U.S.C. § 1491. The fact that it has been concluded that plaintiff's pleaded contract claim is not meritorious does not deprive the Claims Court of counterclaim jurisdiction in this matter under 28 U.S.C. §§ 1503, 2508. Rather, the procedure generally employed is to defer entry of a final judgment on a plaintiff's claim within the court's jurisdiction pending final resolution of any counterclaim(s) correctly asserted in the matter involved. *Astro-Space Laboratories, Inc. v. United States,* 200 Ct.Cl. 282, 312–13, 470 F.2d 1003, 1020 (1972). The opinion filed July 12, 1983 follows this accepted procedure.

Plaintiff next opposes the filing of defendant's proposed counterclaims for breach of contract damages and excess reprocurement costs on the bases that a contracting officer's decision is a prerequisite to the assertion of the government's claims and that the government's claims are premature.

Section 6(a) of the Contract Disputes Act, 41 U.S.C. § 605(a) (CDA), provides (in part) that "All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer." If the government claims in this matter can be brought under the terms of the CDA, a contracting officer's decision is required as a prerequisite to court or board action with respect to them. *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176,

645 F.2d 966 (1981); *Space Age Engineering, Inc.,* ASBCA No. 26028, 82–1 BCA ¶ 15,766.

The Plum Island construction contract involved in this matter was executed in 1976. While the CDA did not go into effect until March 1, 1979, it also provided that "[n]otwithstanding any provision in a contract made before the effective date of this Act, the contractor may elect to proceed under this Act with respect to any claim pending then before the contracting officer or initiated thereafter." Sec. 16, Pub.L. No. 95–563, 92 Stat. 2383, 2391, 41 U.S.C. § 601 note (Supp. III 1979).

In *Tester Corp. v. United States,* 227 Ct.Cl. 648, 651 (1981), the Court of Claims ruled that a government claim, on a 1975 contract, that was pending before the contracting officer on March 1, 1979 could, at the election of the contractor, be brought under the terms of the CDA. After withdrawing an opinion reaching a result consistent with *Tester,* in *Woods Hole Oceanographic Institution v. United States,* 677 F.2d 149, 156 (1st Cir.1982), the court construed the above-quoted CDA language "as limited to claims of the contractor, not of the government." A review of the pertinent legislative history of the CDA discloses no support for this interpretation excluding government claims from the coverage election permitted to contractors under section 16. *See McDonnell Douglas Corp.,* ASBCA No. 26747, 83–1 BCA ¶ 16,377 at p. 81,418.

■ Rather, it is concluded that the plain meaning of the CDA should control and that, on a pre-Act contract, a contractor may elect to proceed under the CDA with respect to "any claim," including a government claim, initiated after March 1, 1979. *See F. Alderete General Contractors v. United States,* Fed.Cir., 715 F.2d 1476 (1983).

To enable a contractor to make the election provided by CDA section 16, all contract claims initiated after March 1, 1979 should be the subject of a contracting officer's decision as is contemplated by section 6 of the CDA, 41 U.S.C. § 605.

Were contracting officer decisions now to be issued on the damage and excess cost claims defendant proposes as counterclaims in this matter, several courses of action would then be open to plaintiff. If plaintiff elected CDA coverage, an appeal on both claims could be taken to the requisite board (Sec. 7, 41 U.S.C. § 606) or, alternatively, an action could be filed on both matters in the Claims Court (Sec. 10(a)(1), 41 U.S.C. § 609). If plaintiff did not elect CDA coverage, an appeal to the requisite contract appeals board would, presumably, be required under the disputes clause of the contract only with respect to the government's excess reprocurement cost claims (for relief available under the contract) and the government would be free to assert and prosecute a breach of contract claim as a *de novo* Claims Court counterclaim. *United States v. Utah Construction and Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *United States v. Anthony Grace & Sons, Inc.,* 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); *Marley v. United States,* 191 Ct.Cl. 205, 423 F.2d 324 (1970).

However, under pre-CDA contract disputes procedure, the *de novo* prosecution, in court, of a so-called "breach" action is usually deferred to await the conclusion of any related disputes clause proceeding before a board of contract appeals. *See Nager Electric Co. v. United States,* 177 Ct.Cl. 234, 255, 368 F.2d 847, 861 (1966). One reason for this practice is to gain the benefit of administrative factual determinations common to both actions which would then, if appropriately supported, not require relitigation in court. *United States v. Utah Construction and Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

■ Normally, leave to amend a pleading should be freely given unless the amendment would be futile or unless there is undue prejudice to the opposing party. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Given the conclusion that the government's claims can, at the election of the contractor, proceed under the CDA, the first step is to obtain the required election decision. In its opposition to the filing of the government's counterclaims, it is not considered that plaintiff has set forth an unequivocal election that the claims shall proceed under the CDA. If plaintiff so elects, it would be futile and inappropriate to grant leave to file the counterclaims. This is because, upon the issuance of the required contracting officer decisions under the CDA, it will then be plaintiff's election to: (1) take no timely action so that the decisions would then become final (Sec. 6(b), 41 U.S.C. § 605 (b)); or (2) appeal the decisions to the contract appeals board (Sec. 7, 41 U.S.C. § 606); or (3) file a direct action(s) in the United States Claims Court (Sec. 10(a), 41 U.S.C. § 609)).[1] Any Claims Court action would be initiated by the contractor, not by the government. The government is not provided an election, under the CDA, to bring a government claim before the Claims Court rather than before a board of contract appeals.

If, however, plaintiff elects not to invoke CDA coverage over defendant's claims, then, as noted previously, defendant has a right to plead a breach of contract claim as a counterclaim in this matter and leave to so plead would be granted. Leave to file an excess reprocurement cost claim would not be granted as *de novo* action on such a claim in this court would not be available under established precedents. *See Zidell Explorations, Inc. v. United States,* 192 Ct.Cl. 331, 427 F.2d 735 (1970).[2] The matter

---

1. Section 14(i) of the CDA specifically amended 28 U.S.C. § 1491 to grant the Claims Court jurisdiction "to render judgment upon any claim by or against, or dispute with, a contractor arising under the Contract Disputes Act of 1978." Pub.L. No. 95–563, 92 Stat. 2391. Prior to this express grant of "disputes" jurisdiction, it was necessary for a contractor to pay any claim assessed against it by the government and then sue for a refund in order to have the money claim "against" the United States then required by 28 U.S.C. § 1491. *Computer Wholesale Corp. v. United States,* 214 Ct.Cl. 786, 566 F.2d 1189 (1977).

2. *De novo* proceedings on the breach of contract counterclaim would, undoubtedly, be suspended to await completion of mandatory administrative proceedings on the government's

could come before the Claims Court only for judicial review of any ensuing decision of the board of contract appeals. *W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1339 (Fed.Cir.1983).

### Conclusion

Based upon the foregoing discussion, it is ORDERED:

(1) On or before December 16, 1983 plaintiff shall file a "Statement" with the clerk of the court setting forth an election either to proceed under the CDA with respect to defendant's proposed counterclaims or an election not to proceed under the CDA with respect to defendant's proposed counterclaims;

(2) In the event plaintiff's statement under (1) is an election to proceed under the CDA, defendant's motion for leave to file an amended answer and counterclaims is denied and a final judgment shall be entered in favor of defendant and against plaintiff dismissing the complaint on the basis of the opinion filed July 12, 1983;

(3) In the event plaintiff's statement under (1) is an election not to proceed under the CDA, defendant's motion for leave to file an amended answer and counterclaims is granted only to the extent of leave to file a counterclaim for breach of contract and is otherwise denied with an appropriate amended answer and counterclaim to be filed within 20 days of the service of plaintiff's statement electing not to proceed under the CDA.

---

related excess reprocurement cost claim and, perhaps, to await conclusion of the District Court performance bond litigation now pending between defendant and Seaboard Surety Company in which plaintiff is a third-party defendant. *See Department of Natural Resources and Conservation of the State of Montana v. United States,* 1 Cl.Ct. 727, 737–43 (1983). The pend-

ency of this District Court litigation does not preclude the filing of a counterclaim on the same subject matter in the Claims Court as 28 U.S.C. § 1500 does not apply to government claims. *Universal Fiberglass Corp. v. United States,* 210 Ct.Cl. 206, 218, 537 F.2d 393, 399 (1976).