COX CONSTRUCTION CO., and Haehn Management Co., a joint venture, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 78–89C.

United States Claims Court.

Aug. 7, 1990.

Richard D. Corona, San Diego, Cal., Atty. of Record, for plaintiff. Corona, Balistreri & Ramseyer, of counsel.

William K. Olivier, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, and Lt. Col. Brian Kessler, Judge Advocate General's Office, Dept. of the Air Force, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. Plaintiff is a joint venture which contracted to build a commissary for the United States Air Force at Vandenburg Air Force Base, California. Plaintiff seeks an equitable adjustment of its contract with defendant. Plaintiff also requests remission of the liquidated damages withheld by defendant for delay in completion of the project. In this motion, defendant asserts that the claim certification was defective because only one member of the joint venture signed it and did so without indicating that it was submitted on behalf of the joint venture.

## FACTS

On September 28, 1984, the United States Air Force awarded Cox Construction Co. (Cox Co.) and Haehn Management Co. (Haehn Co.), a joint venture,[1] a contract for $8,288,524.00 to construct a commissary at Vandenburg Air Force Base, California. The contract award papers show that two individuals, James M. Cox (Mr. Cox), president of Cox Construction Co. (Cox Co.), and Sylvester L. Haehn (Mr. Haehn), president of Haehn Management Co. (Haehn Co.), were authorized to sign on behalf of the joint venture.

According to the declaration of Mr. Haehn and the affidavit of Mr. Cox,[2] Mr. Cox was authorized to act on behalf of the joint venture concerning all aspects of the contract.[3] This is supported by the record, which shows that throughout the performance of the contract, defendant exclusively worked with Mr. Cox. Correspondence between plaintiff and defendant was directed through Mr. Cox. Change orders and United States Department of Treasury checks were issued exclusively to Cox Co.

By letter dated January 21, 1988, Cox Co. submitted a claim to the contracting officer requesting an equitable adjustment in the price of the contract.[4] The letter from the law firm of Corona & Prager stated that the firm had "been retained to represent the legal interests of Cox Construction Company Incorporated in regard to various delay claims involving the above referenced contract." In addition to this letter was the certification, dated January 21, 1988, and signed by "Mr. James M. Cox, President, Cox Construction Company"; also, it referred to the number of the contract. Pursuant to the requirements set by the CDA, 41 U.S.C. § 605(c)(1) (1988), the certification attested that the claim for an equitable adjustment of $586,237.00 was

---

1. The co-venturers do not have a written joint venture agreement. According to plaintiff, the two companies "have conducted business for years as a joint venture or did during this period of time." Transcript (Tr.) p. 10–11.

2. Mr. Haehn's declaration is dated November 14, 1989. Mr. Cox's affidavit is not dated but appears also to have been taken at the time of the filing of Plaintiff's Opposition to Defendant's Motion to Dismiss, November 27, 1989.

3. These documents also state that the claim submitted to the contracting officer was on behalf of the joint venture.

4. Plaintiff alleges that it incurred additional costs because of delays associated with the procurement and installation of masonry block for the project. According to the pleadings, plaintiff's subcontractor, Aldaco & Aldaco Co. had difficulties with Davidson Brick Co., the source named by defendant in the bid documents as the block supplier for the project.

made in good faith, that the supporting data filed with the claim were accurate and complete, and that the amount requested accurately reflected the sum for which the contractor believed the government was liable. However, the certification did not identify that Mr. Cox was acting on behalf of Haehn Co., as well as Cox Co. Aside from this signature issue, the certification met all the requirements for certification set by the CDA. On July 20, 1988, the contracting officer (CO) issued a final decision to Cox Co. which denied plaintiff's claim.

In this motion, defendant asserts that the certification was defective because only one member of the joint venture signed it and did so without indicating that it was submitted on behalf of the joint venture. In response, plaintiff contends that Mr. Cox at all times was fully authorized to act on behalf of the joint venture and did so act when he submitted the claim to the CO. Plaintiff's two main arguments are that the claim is properly certified or, alternatively, that it is in substantial compliance with the certification requirements.

On February 14, 1989, plaintiff timely filed its complaint before this court. Defendant moved to dismiss on August 10, 1989. In response on July 28, 1989, plaintiff filed an unopposed motion for a 90–day enlargement of time from the court so that it could submit the claim properly and obtain a decision from the CO, or wait 60 days for it to be deemed denied. On November 27, 1989, plaintiff changed its mind and, by leave of the court, filed its Opposition to Defendant's Motion to Dismiss. Defendant filed its reply brief on December 7, 1990. Oral argument on the motion to dismiss was held on June 15, 1990.

## DISCUSSION

### A. Certification

The CDA provides the administrative procedure for the resolution of any contract dispute between an executive agency and a "party to a Government contract other than the Government." 41 U.S.C. § 601(4) (1988). The CDA provides that:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.

41 U.S.C. § 605(a) (1988).

For any claim in excess of $50,000.00 the aggrieved contractor must certify that: (a) the claim is made in good faith; (b) the supporting data filed therewith are accurate and complete; and (c) the amount requested accurately reflects the sum for which the contractor believes the government is liable. 41 U.S.C. § 605(c)(1) (1988).

■ The Claims Court has interpreted the CDA's administrative procedure to be a jurisdictional prerequisite to judicial review. *Great Lakes Educ. Consultants v. Federal Emergency Management Agency,* 582 F.Supp. 193, 195 (W.D.Mich.1984). The court in *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 645 F.2d 966 (1981), *aff'd,* 230 Ct.Cl. 884 (1982), referred to the CO's decision as the "linchpin" for appealing claims to the Claims Court. The CO does not have the authority to issue a decision, however, unless a valid, cognizable "claim" has been submitted. *Paragon Energy Corp.,* 227 Ct.Cl. at 184, 645 F.2d 966. If the alleged claim is defective, it must be corrected and resubmitted before the jurisdiction of this court can be invoked. *Conoc Constr. Corp. v. United States,* 3 Cl.Ct. 146 (1983); *T.J.D. Servs., Inc. v. United States,* 6 Cl.Ct. 257, 262 (1984).

Defendant states the issues as: "[W]hether he [Mr. Cox] had the authority to bind the joint venture by signing solely by himself for this purpose of certification ... [and] whether he did, in fact, act on behalf of the joint venture."

The CDA merely provides that "the contractor shall certify...." 41 U.S.C. § 605(c)(1) (1988).

The Federal Acquisition Regulation (FAR) further identifies those individuals within the contractor's organization who properly may act for the contractor in certifying:

> If the contractor is not an individual, the certification shall be executed by—(i) A senior company official in charge at the

contractor's plant or location involved; or (ii) *An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.* [Emphasis added.]

FAR 33.207, 48 C.F.R. § 33.207 (1988).

■ Under this regulation, the question presented is whether Mr. Cox is a general partner with overall responsibility for the conduct of the contractor's affairs. This court interprets "overall responsibility" as requiring an inquiry into whether Mr. Cox by himself can bind the joint venture as to third parties, such as defendant, in transactions within the scope of the joint venture's activities, such as claim submission. In doing so, attention must be paid to the legal structure of the business organization. The parties have lightly touched upon this body of law, yet their respective positions are vividly contrasting. Plaintiff analogizes to partnership law. Defendant contends that:

> [A] partnership is a different organization entity than a joint venture. *This is not a partnership* and bid for the contract, so I would not consider him in the status of a general partner. *It was a joint venture which has a different legal significance.* [Emphasis added.]

Transcript (Tr.) p. 6.

Unfortunately, defendant never explains what that difference is.

A survey of joint venture law supports the idea that Mr. Cox is a general partner with the requisite authority as contemplated by the FAR and the CDA.

Black's legal dictionary defines a joint venture as:

> A legal entity in the nature of a partnership engaged in the joint prosecution of a particular transaction for mutual profit.... A one-time grouping of two or more persons in a business undertaking. Unlike a partnership, a joint venture does not entail a continuing relationship among the parties.

BLACK'S LAW DICTIONARY 753 (5th ed. 1979). *See Lentz v. United States,* 171 Ct.Cl. 537, 545–46, 346 F.2d 570 (1965).

■ The court notes that a joint venturer, in absence of special agreement, does not have the right to bind other joint venturers. *Nelson Inc. v. Tarman,* 163 Cal. App.2d 714, 329 P.2d 953 (1958). Nevertheless, the joint venturers may, by agreement, grant authority to one or more of their number to bind the whole. *Stilwell v. Trutanich,* 178 Cal.App.2d 614, 3 Cal.Rptr. 285 (1960). This authority may be oral or implied from circumstances. *Foote v. Posey,* 164 Cal.App.2d 210, 330 P.2d 651 (1958).

■ Here the record indicates that there was an oral agreement between the parties to allow Mr. Cox to bind the joint venture. Defendant has failed to rebut this showing by plaintiff. In addition, such an agreement could easily be implied from the circumstances: All correspondence to the Air Force was signed solely by Mr. Cox under the letterhead of Cox Co.; all correspondence from the Air Force's counsel was directed to Mr. Cox at Cox Co.; all amendments/solicitations which the Air Force issued were signed solely by Mr. Cox;[5] all negotiations with the Air Force were conducted by Cox Co.; all checks issued by the Air Force were addressed solely to Cox Co.; all U.S. Department of Treasury checks were made payable solely to Cox Co.; and all vouchers were issued by the Air Force to Cox Co. The CO's final decision was directed only to Cox Co. Additionally, these facts show that defendant throughout the contract performance, recognized Mr. Cox's authority and status as a general partner.

In response, defendant argues that an agent may very well have authority to sign certain change orders or documents during the pendency of the case; however, that does not necessarily mean that he has the same authority with regard to certification. However, this court finds that Mr. Cox's

---

5. Each of the three change order forms indicates in box 8 that the contractor is Cox Construction Co. (Cox Co.) and Haehn Management Co. (Haehn Co.), a joint venture. Mr. Cox signed by himself in box 15b above the words "signature of person authorized to sign" for the contractor. These were accepted by defendant.

certification authority was continuous and unquestionable. The regulation defines the requisite authority as "overall responsibility." Mr. Cox demonstrated that responsibility throughout the contract performance, including the claim submission period. *Compare Al Johnson Constr. Co. v. United States,* 19 Cl.Ct. 732 (1990).

### B. Strict Compliance v. Substantial Compliance

■ Appealing to the formal concerns of this court, defendant asks us to accept nothing less than "full-certification" by both joint venturers.[6] Defendant cites numerous cases in support of this standard. However, the essential rationale behind strict compliance with the certification requirement is inapplicable here. Foremost among the reasons cited for strict compliance is that it "triggers a contractor's potential liability for a fraudulent claim under section 604 of the Act." *T.J.D. Servs. Inc.,* 6 Cl.Ct. at 262, (quoting *Skelly & Loy v. United States,* 231 Ct.Cl. 370, 376 n. 11 (1982)). The requirement thus "discourage[s] the submission of unwarranted [contractor] claims." *Great Lakes Educ. Consultants v. Federal Emergency Management Agency,* 582 F.Supp. at 195. Here, there has been absolutely no showing by defendant that the joint venturers are in some way escaping potential liability. Furthermore, defendant has not shown that by allowing plaintiff's claim, this court would encourage unwarranted claims.

Substantial compliance with certification requirements by the contractor may prevent claim dismissal. This concept has its genesis in cases such as *United States v. General Elec. Corp.,* 727 F.2d 1567 (Fed. Cir.1984), where the Court of Appeals for the Federal Circuit focused on the information and statements required by the CDA and also the attachments in deciding

whether a claim was in substantial compliance. *Id.* at 1569.

The question here is whether the claim with its attachments sufficiently references the joint venture. Several documents attached to the claim refer to the joint venture and identify Mr. Cox's authority: A letter dated September 30, 1986, that outlined plaintiff's claim was signed by Mr. Cox on behalf of the joint venture; a contract pricing proposal sheet identified Cox Co. as the point of contact for the joint venture. Also the claim references the contract number. In addition, the sum requested in the claim was not divided into joint venture shares. In light of these facts, the court finds that the doctrine of substantial compliance is applicable here.

Furthermore, the cases cited by defendant are distinguishable. Defendant cites *Pine Prods. Corp. v. United States,* 15 Cl.Ct. 11, 14 (1988), for "the universal rule ... that an individual co-venturer may not sue in his own name to enforce a liability owed the joint venture." In *Pine* plaintiff was a co-venturer seeking a partial refund of a fee that the joint venture paid to the government. The *Pine* court rejected plaintiff's attempt to litigate a separate claim apart from the joint venture, because liability was owed to the joint venture. There is no justifiable fear in the instant case of multiple lawsuits being filed against the same defendant, which was the rationale behind the holding in *Pine.* In *Boeing Co.,* 89–1 B.C.A. (CCH) ¶ 21,421, 1988 WL 142363 (1988), *later proceeding,* 90–2 B.C.A. ¶ 22,769 (1990), a claim submitted on behalf of a joint venture was dismissed for lack of certification because the certification was made by only one member of a joint venture. *Boeing,* is distinguishable because there it was not clear to the Armed Services Board of Contract Appeals (Board) whether the signator of the certification possessed the necessary

---

**6.** In addition, defendant argues that the claim is defective because it was submitted by an attorney on behalf of the co-venturer, Cox Co. However, this point was not seriously argued by counsel and the court finds it immaterial. During oral argument, defendant submitted that: [T]he alleged claim letter was signed by the attorney and the language of the statute says

that a claim must be brought by the contractor. *I think that is an issue ... that would be presented to the Court at some time—maybe not in this case, but in some other case ...* [Emphasis added]. Tr. pp. 20–21.

authority to bind the joint venture. Furthermore, the claim allegedly presented by plaintiff in *Boeing* on behalf of the joint venture essentially represented the damages of only one of the parties to the venture. Because this created doubt as to whether the other party joined in the claim, the Board concluded that there was "no excuse for providing anything less than a full certification" by both co-venturers. *Id.* Finally, in *Ball, Ball & Brosamer, Inc. v. United States*, 878 F.2d 1426 (Fed.Cir. 1989), the Court of Appeals for the Federal Circuit concluded that the signator of a joint venture's certification did not possess the "general corporate authority" required by FAR 33.207, 48 C.F.R. § 33.207 (1988). *Ball*, 878 F.2d at 1427. *Ball* stands only for the proposition that statute requires a certification must be signed by an individual who has the authority to bind the joint venture. It is apparent from the record, and has not been rebutted by defendant, that Mr. Cox had such certification authority and was acting with it when he submitted the claim to the CO.

The CDA requires that a certificate be submitted by the contractor. 41 U.S.C. § 605(c)(1) (1988). Mr. Cox had the authority to bind the joint venture under the FAR, 48 C.F.R. § 33.207 (1988). In light of its past dealings, the documents attached to the certified claim which made reference to the joint venture and Mr. Cox's position with the joint venture, and the two co-venturers' sworn testimony that Mr. Cox was acting on behalf of the joint venture when he submitted the claim and certification, plaintiff substantially complied with the administrative procedures required by the CDA. Therefore, in view of these facts, the certification is valid.[7]

## CONCLUSION

The court finds that plaintiff has substantially complied with the certification requirements of the statute. Therefore, defendant's motion to dismiss is denied. The parties shall file a status report within 30 days of this Opinion indicating further proceedings in accordance with RUSCC, Appendix G.

---

7. Additionally, plaintiff makes both a congressional intent and an estoppel argument. Based on the above disposition, the court finds it unnecessary to address these contentions.