UNIVERSAL COATINGS/WON ILL
CO., LTD. (JOINT VENTURE),
Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 738–88C, 90–580C.

United States Claims Court.

Sept. 19, 1991.

Jon T. Anderson, San Francisco, Cal., for plaintiff.

Richard E. Rice, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen and Asst. Director Sharon Y. Eubanks, for defendant. Patrick Lisowski, Major, U.S. Army, Office of the Judge Advocate Gen., of counsel.

OPINION

LYDON, Senior Judge:

Only one of two consolidated government contract cases is before the court on the motion of defendant, filed March 8, 1991, to

dismiss the complaint of Universal Coatings/Won Ill Co., Ltd., a joint venture (plaintiff), in case No. 90–580C for failure to properly certify its claim in accordance with section 605(c)(1) of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 *et seq.* Plaintiff opposes defendant's motion to dismiss its complaint.[1] After careful consideration of the parties' submissions, and following oral argument held on September 18, 1991, the court grants defendant's motion to dismiss.

## FACTS

On January 18, 1986, Universal Coatings, Inc. (Universal), a Nevada corporation, and Won Ill Co., Ltd. (Won Ill), a Korean corporation, entered into a joint venture agreement entitled "JOINT OPERATION AGREEMENT."[2] Pursuant to the agreement, the parties agreed to obtain and perform a foam insulation contract with the United States Eighth Army (Army). The agreement specifically states that "[t]he parties do not intend for this Agreement to be a partnership agreement. Neither party shall be an agent of the other.... [T]he parties do not intend to be partners...."

The joint venture agreement also warns that "[n]othing herein shall be construed to create a general partnership and/or joint venture company between the parties or to authorize either party to act on behalf of the other except as provided for under this Agreement."

The joint venture agreement designates the joint responsibilities of the parties as "bidding and contract negotiations." Universal's responsibilities were to include "[c]ontract management and control, construction and field supervision, amendment

and modification to the Contract, receipt and disbursements of all payments from the Customer." In addition, Universal would provide all equipment and supplies. Won Ill's responsibilities would be limited to performing surface preparation and application.

The joint venture agreement also designates representatives for the respective parties "to act for them in all ... matters [in connection with performance of the contract], with full and complete authority to act on their behalf in relation to [the joint venture] and in relation to [the contract].... UNIVERSAL hereby appoints LARRY WHITTAKER and MICHAEL E. COOK as its representatives; WON ILL hereby appoints PAEK SONG HYON as its representative." The joint venture agreement was signed by Larry Whittaker as president of Universal and by Paek Song Hyon for Won Ill.

On May 7, 1986, the Army awarded contract No. DAJB03–86–D–4001 to "Universal Coatings/Won Ill Co., Ltd. (Joint Venture)." Under the contract, the joint venture was to supply and apply polyurethane coating to quonset-type buildings at Army installations in Korea. During the course of performance of the contract, a dispute arose concerning costs incurred by Universal in connection with work stoppage. In connection with the work stoppage dispute, Universal submitted a claim dated June 24, 1987 to the contracting officer for an equitable adjustment in the amount of $25,000 (work stoppage claim). By letter dated December 17, 1987, the contracting officer issued a final decision denying Universal's work stoppage claim. Consequently, Universal filed suit in this court (No. 738–88C) on December 20, 1988 to appeal the con-

---

1. These cases were consolidated pursuant to a motion filed by plaintiff advising that both suits arose under the same contract and concern similar governmental actions. Each suit challenges denial of the claims asserted in these cases by a contracting officer. Case No. 738–88C involves denial of work stoppage claims in the amount of $25,000 by a contracting officer's decision dated December 17, 1987. Case No. 90–580C, which is the subject of the motion to dismiss for lack of proper certification currently before the court, involves denial of claims in the amount of

$993,547 by a contracting officer's decision dated May 31, 1990. The claims in case No. 90–580C are sometimes referred to collectively as the "General Adjustment Claim" to distinguish them from the claim in case No. 738–88C.

2. A "joint venture" is generally an association of persons by way of contract to engage in and carry out a single business adventure for joint profit, combining their efforts, property, money, skill and knowledge without creating a partnership or a corporation. *Lentz v. United States,* 171 Ct.Cl. 537, 546, 346 F.2d 570, 575 (1965).

tracting officer's final decision. On May 9, 1988, defendant moved to dismiss the complaint on the ground that Universal could not maintain an action on behalf of the joint venture without naming Won Ill as a plaintiff. *See Pine Products Corp. v. United States*, 15 Cl.Ct. 11, 14 (1988). On August 24, 1989, by leave of court, Universal filed an amended complaint naming as plaintiff "Universal Coatings/Won Ill Co., Ltd. (Joint Venture)." Defendant agreed that upon the filing of the amended complaint, its motion to dismiss should be denied. The motion to dismiss was denied by unpublished order dated August 24, 1989. Since the claim in case No. 738–88C was for $25,000, it was not required by section 605(c)(1) of the CDA to be certified. Accordingly, the claim in case No. 738–88C is not the subject of defendant's motion to dismiss now before the court.

On October 19, 1989, the joint venture submitted a claim on the same contract to the contracting officer for an equitable adjustment to the contract in the amount of $993,547 (general adjustment claim). The claim sets forth grounds for adjustment with respect to nine items: calculation of payment under the contract (stretch factor computations), port closure costs, storage costs, color change costs, fuel costs, travel costs, labor costs, interest costs, and miscellaneous costs. The claim states that it "concerns increased costs incurred by Universal Coatings, Inc. in the performance of its portion of the work required by the subject contract. No portion of the claim concerns work performed or costs incurred by Won Ill Co., Ltd." The claim contains the following certification:

I, Larry Whittaker, President of Universal Coatings, Inc., pursuant to agreement of the participants and on behalf of Universal Coatings/Korea, a joint venture of Universal Coatings, Inc., a California corporation, and Won Ill Co., Ltd., a Korean corporation, contractor under contract DAJB03–86–D–4001, hereby certify as follows:

The claim to which this certification is attached, titled "Claim of Universal Coatings/Korea (Joint Venture)—General Adjustment Claim," dated October 19, 1989:

is made in good faith;

the supporting data are accurate and complete to the best of the Contractor's knowledge and belief; and

the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable.

The certification is signed "Larry Whittaker, President, Universal Coatings, Inc., on behalf of Universal Coatings/Won Ill Co., Ltd. (Joint Venture)." On May 31, 1990, the contracting officer issued a final decision, in which he denied the general adjustment claim in its entirety. On June 27, 1990, the joint venture filed suit in this court (No. 90–580C) appealing all but two aspects of the contracting officer's final decision. Apparently, plaintiff dropped its claims for port closure costs and fuel costs after the contracting officer's decision, reducing its total claim before the court to $925,678. On June 28, 1990, the court consolidated these two actions. On November 9, 1990, defendant filed an answer and counterclaim for $6,867.17. On March 8, 1991, defendant moved to dismiss plaintiff's complaint in case No. 90–580C for failure to properly certify its claim, which plaintiff opposes.

## DISCUSSION

### A. CDA Certification Requirements

The parties agree that this case is governed by the provisions of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 *et seq.* The CDA requires that contractors certify all claims over $50,000:

For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1). Certification of contractor claims is a jurisdictional prerequisite to an action brought by a contractor in this court. *United States v. Grumman*

*Aerospace Corp.*, 927 F.2d 575, 579 (Fed. Cir.1991); *Ball, Ball & Brosamer, Inc. v. United States*, 878 F.2d 1426, 1428–29 (Fed.Cir.1989). "[C]ertification plays a serious role in the statutory scheme because it triggers a contractor's potential liability for a fraudulent claim under section 604 of the [CDA]. It is also designed to discourage the submission of unwarranted contractor claims and to encourage settlement." *Skelly & Loy v. United States*, 231 Ct.Cl. 370, 376 n. 11, 685 F.2d 414, 418 n. 11 (1982); *see also Grumman, supra*, 927 F.2d at 579; *Ball, Ball & Brosamer, supra*, 878 F.2d at 1429. In *Grumman, supra*, the Federal Circuit explained that the reason for requiring certification is that "Congress wanted to hold the contractor personally liable, and it considered the best way to do this would be to require contractors to personally certify their claims." *Grumman, supra*, 927 F.2d at 579 (quoting *Ball, Ball & Brosamer, supra*, 878 F.2d at 1429).

■ Section 33.207(c)(2) of the Federal Acquisition Regulations (FAR) implements the certification requirements of section 605(c)(1) of the CDA. When the contractor is not an individual, as is the case here, the regulation provides as follows:

> (2) If the contractor is not an individual, the certification shall be executed by—
>> (i) A senior company official in charge at the contractor's plant or location involved; or
>> (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

48 C.F.R. (FAR) § 33.207(c)(2). In addition, the certifier must have authority to bind the contractor. *Ball, Ball & Brosamer, supra*, 878 F.2d at 1428; *KDH Corp. v. United States*, 23 Cl.Ct. 34, 41 (1991); *Cox Construction Co. v. United States*, 21 Cl. Ct. 98, 103 (1990); *Triax Co. v. United States*, 20 Cl.Ct. 507, 511 (1990).

## B. The Parties' Positions

In its motion to dismiss, defendant argues that, in case No. 90–580C, the general adjustment claim, plaintiff has not met the CDA's jurisdictional prerequisite of submitting a properly certified claim to the contracting officer, and therefore the court lacks jurisdiction to entertain this action. Defendant attacks plaintiff's certification on two grounds. First, defendant claims that Larry Whittaker (Whittaker), President of Universal, lacks authority to bind the joint venture. Second, defendant claims that even if Whittaker has authority to bind the joint venture, he does not possess the requisite status under the applicable regulation to certify the claim on behalf of the joint venture.

With regard to defendant's first point, that Whittaker lacks authority to bind the joint venture, defendant relies on the joint venture agreement to support its position. In the agreement, each party designated its own representatives to handle any matters relative to the joint venture or to the performance of any contract by the joint venture. Whittaker, as president of Universal, was one of the two representatives appointed by Universal. The other was Michael E. Cook, Universal's vice-president. Won Ill appointed Paek Song Hyon, ostensibly as its "authorized representative." Defendant emphasizes the agreement specifically states that Universal and Won Ill are not partners, and that neither party shall act as agent for the other. In addition, defendant points out that, although Universal had general managerial responsibilities under the joint venture agreement, there was no express authorization in the agreement for Universal to sign or certify a claim on behalf of Won Ill. The language in the joint venture agreement designating representatives for each venturer can reasonably be read to require that the representatives of each joint venturer shall be required to sign any certification which could bind the joint venture. The general tenor of the agreement is such that the representative of only one joint venturer would not be sufficient to bind both joint venturers, especially if fraud were alleged against the joint venture in the performance of the contract in question. Defendant finds Universal's lack of authority to bind Won Ill particularly troubling because the general adjustment claim at issue concerns only

work performed or costs incurred by Universal.

Defendant's second argument is that even if Whittaker has the authority to certify the claim on behalf of the joint venture, he does not have the status to certify the claim under either the "senior company official" prong or the "officer or general partner with overall responsibility" prong of the certification requirement. Defendant asserts that not only must a certifier have the authority to bind the joint venture, he must have the requisite status under either prong of the certification requirement, citing *Triax Co. v. United States*, 20 Cl.Ct. 507, 511 (1990). Defendant notes that the joint venture agreement does not designate a representative in the capacity of "senior company official" for the joint venture, and thus Whittaker fails to meet the first prong of the regulation, even though Whittaker, as president of Universal, may be a "senior company official" for Universal. Moreover, defendant points out that even if Whittaker were a senior company official of the joint venture, he was not present at the contractor's work site in Korea on a regular basis, and thus he could not be "in charge at the contractor's plant or location involved." Plaintiff concedes that Whittaker was not present at the work site in Korea on a regular basis.

Defendant also contends that plaintiff's certification does not meet the second prong of the certification requirement, because the joint venture agreement does not designate a person who could be considered "[a]n officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs." Defendant points out that the joint venture agreement does not designate any officers for the joint venture. Moreover, the joint venture agreement expressly states that "[t]he parties do not intend for this Agreement to be construed as a partnership agreement. Neither party shall be an agent of the other.... [T]he parties do not intend to be partners...." In conclusion, defendant asserts that both Universal and Won Ill must certify the claim on behalf of the joint venture to satisfy the

certification requirements. Because they failed to do so, defendant asks the court to dismiss plaintiff's complaint in case No. 90–580C.

Plaintiff maintains that Whittaker has authority to act on behalf of the joint venture, because his authority to do so "has been recognized and confirmed through numerous acts of the government" which purportedly treat Whittaker as plaintiff's authorized representative. Plaintiff also relies on paragraph 4(b) of the joint venture agreement, which delegates to Universal the responsibility for contract management and control. Plaintiff reads this provision as an express written "special agreement" between the joint venturers to grant authority to Universal to bind the joint venture. According to plaintiff, this "special agreement" provides Whittaker with authority to certify the claim at issue.

## C. Joint Venture's Claim Not Properly Certified

### 1. *Lack of Authority to Bind Co-Venturer*

In the case at bar, the contractor is a joint venture, and the contractor's claim was certified by Whittaker alone, as president of Universal, one of the co-venturers. If only one person certifies the claim of a joint venture contractor, the certifier must have authority to bind all the joint venturers. *Cox Construction, supra,* 21 Cl.Ct. at 102–03; *Boeing Co.,* ASBCA No. 36612, 89–1 BCA ¶ 21,421 (1988). In the absence of a special agreement, a co-venturer does not have authority to bind other co-venturers. *KDH Corp., supra,* 23 Cl.Ct. at 45; *Cox Construction, supra,* 21 Cl.Ct. at 101. Some cases have held that such authority may be oral or implied from the circumstances. *KDH, supra,* 23 Cl.Ct. at 45; *Cox Construction, supra,* 21 Cl.Ct. at 101.

In *Boeing,* the board of contract appeals confronted the issue of whether a certification purportedly submitted on behalf of a Bell–Boeing joint venture, but signed only by Boeing's director of contracts, was a proper certification. The

claim at issue concerned costs incurred by Boeing only, not Bell. The board held that the certification was not proper, because there was insufficient evidence that the certifier met the certification requirements of FAR § 33.207(c)(2) to sign on behalf of the joint venture. The board found that certification by only one member of a joint venture does not meet the certification requirement of section 605(c)(1) of the CDA. *Boeing Co.*, ASBCA No. 36612, 89–1 BCA ¶ 24,421 (1988). In the case at bar, the general adjustment claim advanced by the joint venture concerns only costs incurred by Universal, not Won Ill Co., Ltd., which is, as indicated above, similar to the situation in *Boeing.* The board in the first *Boeing* case was not persuaded that a representative of only one of the joint venturers was the proper individual to sign the certification on behalf of the joint venture. Similarly, in the case at bar, the court is not persuaded that the Universal representative alone is the proper individual to sign the certification on behalf of the joint venture, i.e., Universal Coating/Won Ill Co., Ltd., (Joint Venture). In the second *Boeing* case, ASBCA No. 39314, 90–2 BCA ¶ 22,769 (1990), involving the same joint venture discussed above in the first *Boeing* case, ASBCA No. 36612, the board found that Boeing, as one joint venturer, could sign a certificate on behalf of the joint venture because the other joint venturer had executed a power of attorney authorizing Boeing to certify the claim of the joint venture. In the case at bar, no power of attorney has been executed by Won Ill Co., Ltd., the other joint venturer.

Plaintiff distinguishes the first *Boeing* case on the basis that in *Boeing,* neither of the co-venturers had general partnership authority to conduct business on behalf of the joint venture without the consent or authorization of the other, and thus the ASBCA held that the joint venture, acting as a team, must certify the claim. In the case at bar, plaintiff claims that the joint venture agreement expressly provides that only Universal has responsibility for contract management and control, as well as amendments and modifications to the contract. In support of its position, plaintiff submits the declaration of Paek Song Hyon, the "authorized representative" of Won Ill. In his declaration, Paek Song Hyon states that it is his understanding that paragraph 4(b) of the joint venture agreement means that Universal is "in charge of all dealings with the United States government." Paek Song Hyon states, in essence, that he understands the claims asserted by Universal do "not concern anything for which Paek Song Hyon was responsible, and that Won Ill Co., Ltd. will not get any more money from the claim." Accordingly, Paek Song Hyon, "authorize[s] the submission of the claims which are the subject of the law suit."

Plaintiff advises, by means of the declaration of counsel, in its opposition brief that, under the circumstances (translation and authentication) "Mr. Paek's declaration is of questionable authenticity." Quite apart from this fact, the substance of the declaration falls far short of showing that Universal's certification of the claim of the joint venture was such as to bind both joint venturers. It is apparent from a reading of Paek Song Hyon's declaration that since Won Ill Co. was not involved in the claim, he had no concern about Universal's own claim advanced under the aegis of the joint venture contract. It is not at all clear whether Paek Song Hyon would agree as readily to certify this claim should he understand that to do so would bind Won Ill to potential responsibility and liability should it be established subsequently that fraud in the presentation of the claims existed. Submission by a contractor of a fraudulent claim can result in forfeiture of the claim under the CDA (41 U.S.C. § 604), civil monetary sanctions (31 U.S.C. § 3729), debarment (10 U.S.C. §§ 2302(3), 2305(b)(3); 41 U.S.C. § 403(7)), and/or imprisonment (18 U.S.C. §§ 287, 1001). The role and purpose of the certification requirement, as discussed earlier, under the circumstances of this case, must not be forgotten.

Finally, the declaration of Paek Song Hyon is, under the circumstances, much less trustworthy than the power of attorney executed by one member of the joint venture in the second *Boeing* case, *supra,*

or the oral agreement substantiated by an affidavit and two declarations in the *Cox* case, *supra*. It is these types of agreements that have been deemed sufficient to permit one joint venturer to bind both joint venturers by execution of a certification as required by the Contract Disputes Act. Nor does plaintiff proffer any evidence which shows any implied authority for Universal to execute a certification binding Won Ill, as a joint venturer, to the potential liability for any fraud claims that might subsequently be brought against the joint venture by defendant. Indeed, the joint venture agreement between Universal and Won Ill designating representatives of each to act on behalf of the joint venture suggests rather clearly that the signatures of both representatives would be necessary to so bind the joint venture.

The court does not agree that the joint venture agreement reflects a "special agreement" between Universal and Won Ill such that Universal is authorized to submit claims on behalf of the joint venture. As pointed out above, the joint venture agreement designates representatives for the respective parties "to act for them in all.... matters [in connection with performance of the contract], with full and complete authority to act on their behalf in relation to [the joint venture] and in relation to [the contract].... UNIVERSAL hereby appoints LARRY WHITTAKER and MICHAEL E. COOK as its representatives; WON ILL hereby appoints PAEK SONG HYON as its representative." It is not unreasonable to conclude that certification of any claim by the joint venture to the government, under the Contract Disputes Act, would require under the joint venture agreement here in question that both representatives execute the certification in order to bind both joint venturers. The court is not persuaded that the certification of the claim by the representative of Universal alone is sufficient to bind the joint venture of Universal Coatings/Won Ill Co., Ltd. should the claim as certified prove to be fraudulent, erroneous, inaccurate or presented in bad faith.

Nor is the court persuaded by the declaration of Paek Song Hyon, which plaintiff admits is of "questionable authenticity," and which purports to provide after-the-fact authorization for Universal to submit its own claim on behalf of the joint venture. *See KDH Corp., supra*, 23 Cl.Ct. at 43. Paek Song Hyon's declaration states that he understands the claim against the government is that of Universal only, and that Won Ill will not receive any money from Universal's claim. However, Paek Song Hyon does not indicate whether, in the event the government were to submit a counterclaim in fraud, for example, against the joint venture, Paek Song Hyon would still be willing to join in Universal's claim against the government. For this reason, the court finds it necessary that both designated representatives of the co-venturers certify the claim. Otherwise, the purpose of the CDA's certification requirement to hold a contractor personally liable for fraudulent claims could be easily circumvented.

### 2. *Lack of Status to Certify*

Even if the court were to find that Whittaker had authority to submit claims on behalf of the joint venture, Whittaker does not possess the requisite status to properly certify a claim under the CDA. In *Triax Co., supra*, the court distinguished between the authority to bind the joint venture and the status to certify a claim. "The individual certifying a claim on behalf of a corporate contractor must fall within one of the two categories described in [the applicable regulations], *and* he or she must have authority to bind the contractor." *Triax Co., supra*, 20 Cl.Ct. at 511 (emphasis in original). As discussed above, the regulations implementing the CDA set forth two categories of company officials who may properly certify a claim on behalf of a contractor when the contractor is not an individual, such as is the case here: (1) a senior company official in charge at the contractor's (joint venture's) plant or location involved; or (2) an officer or general partner of the contractor (joint venture) having overall responsibility for the conduct of the contractor's (joint venture's) affairs. 48 C.F.R. (FAR) § 33.-

207(c)(2); *Ball, Ball & Brosamer, supra,* 878 F.2d at 1428; *Reliance Ins. Co. v. United States,* 23 Cl.Ct. 108, 112 (1991); *Triax Co., supra,* 20 Cl.Ct. at 511.

As defendant points out, the joint venture agreement does not designate, either expressly or by implication, a representative in the capacity of "senior company official" with respect to the joint venture. Even though Whittaker may meet that definition, as president of Universal, with regard to Universal, there is no indication in the agreement that his authority extends to the joint venture. Moreover, even assuming Whittaker is a "senior company official" with respect to the joint venture, he was not, as plaintiff concedes, in charge at the location involved with regard to contract performance, that is, Korea. Moreover, plaintiff cannot meet the "overall responsibility" prong of the regulations because the joint venture agreement does not designate any officers or general partners of the joint venture. Indeed, the joint venture agreement specifically states that it is not to be construed as a partnership agreement, and that neither party is to act as agent for the other. The purpose of the joint venture agreement's limitation of authority in this regard is ostensibly to limit the liability of each co-venturer to third parties for the acts or omissions of the other co-venturer and the joint venture itself.

The court agrees with defendant that there is no one person designated by the joint venture agreement who satisfies either the "senior company official" prong or the "officer or general partner having overall responsibility" prong of the certification requirement. *Ball, Ball & Brosamer, supra,* 878 F.2d at 1428 (Chief Cost Engineer for one of co-venturers did not have authority to execute certification on behalf of joint venture because he did not meet either prong of certification requirement). Moreover, as discussed above, the joint venture agreement does not expressly delegate authority to Whittaker or any one individual to certify claims on behalf of the joint venture. The joint venture agreement only gives Universal general management responsibility for the contract. Furthermore, the materials before the court do not support the existence of an implied agreement under the circumstances. Therefore, the lack of proper certification of the claim before the court prevents the court from exercising its jurisdiction to adjudicate this claim.

## CONCLUSION

Based on the foregoing discussion, defendant's motion to dismiss plaintiff's complaint for lack of jurisdiction in case No. 90–580C is granted. The Clerk of the court is directed to dismiss the complaint for want of jurisdiction. This dismissal shall be without prejudice.[3] Defendant's counterclaim, asserted in its answer, is likewise dismissed without prejudice.[4]

---

3. Plaintiff is not precluded from *properly* certifying its claim and resubmitting it to the contracting officer, and if denied relief, appealing thereafter either to the administrative Board or to this court. Plaintiff is not without a remedy as a result of this decision. *United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 581 (Fed.Cir.1991).

4. In its answer filed on November 9, 1990 in case No. 90–580C, defendant asserted a counterclaim against the joint venture in the amount of $6,867.17, representing an overpayment by defendant to the joint venture relative to the contract here in issue. Plaintiff failed to file a responsive pleading to the counterclaim within the time period prescribed by RUSCC 12(a) and, accordingly, a Default notice, issued pursuant to RUSCC 55(a), was entered on December 10, 1990. Since the court lacks jurisdiction over plaintiff's claim set forth in the complaint because of improper certification of said claim, the court has no jurisdiction over the counterclaim asserted by defendant in response to said complaint. *Somali Development Bank v. United States,* 205 Ct.Cl. 741, 751–52, 508 F.2d 817, 822 (1974); *Joseph Morton Co. v. United States,* 3 Cl.Ct. 780, 783 (1983), *aff'd,* 757 F.2d 1273 (Fed. Cir.1985).