**PRICE/CIRI CONSTRUCTION, J.V., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 442–89C, 90–159C.**

United States Court of Federal Claims.

Feb. 25, 1993.

David M. Freeman, Anchorage, AK, for plaintiff.

Julie A. Shubin (No. 442–89C) and Shalom Brilliant (No. 90–159C), Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

OPINION

MARGOLIS, Judge.

These cases are before the court on defendant's motions to dismiss for lack of subject matter jurisdiction and plaintiff's motions for substitution of the real party in interest. Plaintiff, a defunct joint venture, appeals contracting officer's decisions denying reimbursement for added costs on two contracts. Defendant asserts that claims arising under the contracts do not belong to plaintiff and that plaintiff lacks standing and capacity to sue. Plaintiff moves to substitute one of the two joint venturers as the real party in interest. Defendant asserts that plaintiff's assignment of the contracts to one of the two joint venturers was invalid under the Anti-Assignment Act. Defendant asserts that, pursuant to the Contract Disputes Act, the joint venturer does not have privity of contract with the United States and the individual certifying the claims was not authorized to do so. After careful consideration of the record, and after hearing oral argu-

ment, this court grants defendant's motions to dismiss, denies plaintiff's motions to substitute the real party in interest, and dismisses defendant's counterclaim.

### FACTS

Plaintiff Price/CIRI Construction, J.V. ("Price/CIRI") was the operating name for an Alaska-based joint venture between H.C. Price Construction Co. ("HCP") and CIRI Construction Co. ("CCC"). The purpose of the joint venture was to undertake construction projects in Alaska involving building trades work.

*The Contracts*

Defendant United States, through the Department of the Army, U.S. Army Engineer District, Alaska ("the Corps") awarded Price/CIRI two contracts that form the underlying bases for plaintiff's claims in this court. Case No. 442–89C concerns Contract No. DACA85–87–C–0017, in the amount of $20,517,999, which the Corps awarded to Price/CIRI on April 24, 1987 for constructing a new utility system and upgrading the existing system at Fort Wainwright, Alaska ("the Wainwright contract"). On June 16, 1988, while performing work on the Wainwright contract, a steam valve ruptured. Plaintiff alleges that the ensuing shutdown adversely impacted its costs and schedules, and resulted in added costs of $487,234. Defendant counterclaims in the amount of $5,000 for the cost of replacing the ruptured steam valve.

Case No. 90–159C concerns Contract No. DACA85–86–C–0062, in the amount of $17,-478,456, which the Corps awarded to Price/CIRI on September 12, 1986 for alteration of the central heat and power plant at Eielson Air Force Base ("the Eielson contract"). On March 17, 1988, after installation of the steam piping support system on the Eielson contract was completed, the steam turbine manufacturer refused to warrant start-up and field performance testing of the turbine because the piping system did not adequately compensate for linear thermal expansion. Plaintiff alleges that it is entitled to $125,441.65 for expenses incurred in performing steam piping

stress analysis, and redesign and rework of the steam piping support system.

*Price/CIRI's Dissolution*

At the time of each contract award, the Construction Joint Venture Agreement (Amended) of October 1, 1984 ("Joint Venture Agreement") established Price/CIRI and governed the relationship between HCP and CCC. The Joint Venture Agreement designated HCP as the Managing Venturer which:

shall be responsible for the overall operation of the Joint Venture, shall have authority to carryout [sic] the authorized business of the Venture, and shall have additional specific powers and responsibilities as the Joint Venturers may from time to time delegate.

Joint Venture Agreement art. VII, sec. 5. The Joint Venture Agreement also provided for its dissolution, as follows:

Upon the dissolution of the Joint Venture under this Article, the Joint Venture shall proceed to wind-up its business and affairs. During the winding-up of the Joint Venture, projects of the Joint Venture then under contract, including any extensions thereto, shall be completed by the Joint Venture in accordance with the terms of this Agreement, all financial obligations of the Joint Venture shall be satisfied, all disputes, claims, causes of action or the like shall be resolved, and the Joint Venture shall receive and account for full payment of all sums to which it is entitled..... After completion of the winding-up of the Joint Venture, the Joint Venture shall terminate.

*Id.* art. IV.

For much of the contract performance periods, including the periods at issue in both claims, Price/CIRI did not exist. Cimarron Holdings, Inc. and Cook Inlet Region, Inc., parent corporations of HCP and CCC respectively, agreed to dissolve Price/CIRI. A July 16, 1987 letter from Cimarron Holdings, Inc. to Cook Inlet Region, Inc., signed by representatives of each corporation, specifically addresses the Joint Venture Agreement's wind-up provision:

The joint venture agreements call for the completion of all work in hand by the

joint ventures. This would entail certain administrative complications such as the allocation of overhead and other costs that I think we both would prefer to avoid. Therefore, to arrive at an expeditious and equitable dissolution of the joint ventures, [Cimarron Holdings] would be willing to agree to distributions from them to CIRI's subsidiaries, Champion Construction Co. and CIRI Construction Co., in amounts we would have to work out, but which would total $1,785,000.00 (One Million Seven Hundred Eighty–Five Thousand Dollars).

Def.'s Mot. Dismiss [No. 90–159C] App. at 17. This understanding between the parent corporations manifested itself in the Agreement of Dissolution and Termination that HCP and CCC executed on July 23, 1987 ("Dissolution Agreement"). The Dissolution Agreement terminated the Price/CIRI Joint Venture on June 30, 1987 ("Effective Date"). The Dissolution Agreement provided that CCC would receive $1,262,656 in cash and HCP would receive all other Price/CIRI assets including "all contracts in hand as of the Effective Date[.]" Dissolution Agreement para. 2. Consistent with the parent corporations' understanding, the Dissolution Agreement further provided that:

3. .... Upon termination of the Joint Venture, CCC's and [HCP]'s rights and liabilities with respect to Joint Venture activities prior to the Effective Date, and with respect to contracts in hand on the Effective Date, ... (the "Contracts"), shall be as follows:
a. CCC shall have no further liability for losses or right to profits from the Contracts.
b. [HCP] shall bear full responsibility for any loss or losses in connection with the completion of the Contracts and shall be entitled to all profits from the Contracts.
c. CCC and [HCP] shall each continue to indemnify the other against liabilities to third parties arising from Joint Venture activities, which are incurred prior to the Effective Date and which exceed their respective interests in the Joint Venture.....

4. Notwithstanding any provision in the Joint Venture Agreement to the contrary, this Agreement constitutes the full and complete agreement of the parties with respect to the dissolution and termination of the Joint Venture....

*Id.* paras. 3, 4.

The Dissolution Agreement also specifically forbade further use of the name Price/CIRI "unless such use [wa]s authorized in advance by mutual written agreement." *Id.* para. 2.d.

## DISCUSSION

*Price/CIRI's Standing and Capacity to Sue*

■ In its motions to dismiss, defendant contends that this court lacks subject matter jurisdiction to entertain plaintiff's complaints because claims arising under the contract do not belong to Price/CIRI, and therefore Price/CIRI lacks standing and capacity to sue.

Pursuant to the Dissolution Agreement, Price/CIRI ceased to be a legal entity on June 30, 1987. By express agreement of the co-venturers, Price/CIRI was prevented from winding-up its ongoing business and affairs as a joint venture. *See* Alaska Stat. § 32.05.240 (1991). Instead, Price/CIRI was divided between the co-venturers on the date of dissolution.

The events giving rise to plaintiff's claims, as well as the filing of the claims with the contracting officer, occurred long after the dissolution. By that time, Price/CIRI had ceased to have any interest in claims arising from the two contracts. Thus, Price/CIRI has neither standing nor capacity to sue in this court.

*Adequacy of Claims*

■ In view of this court's determination that Price/CIRI lacks standing and capacity to sue, the court must examine the jurisdictional adequacy of the claims and their accompanying certifications. Clearly, since Price/CIRI did not exist, the joint venture could not be bound. Yet both claim certifications were submitted on Price/CIRI let-

terhead, and were asserted in the name of the defunct Price/CIRI. Wesley P. Nason, who signed them as "Vice–President and General Manager," held that title at HCP rather than at Price/CIRI. Nason may have been authorized to bind HCP, but the certifications attempt instead to bind Price/CIRI.

■ The court disagrees with plaintiff's assertion that its use of Price/CIRI's name on the certifications was a "misnomer." It is apparent from the record in this court, and from CCC's later attempt to ratify HCP's actions,[1] that plaintiff intended to assert the claims in the name of Price/CIRI, not HCP. *See Kiewit/Tulsa–Houston v. United States*, 981 F.2d 531 (Fed. Cir.1992) (holding joint venturers to their agreement specifying the appropriate authority to certify claims on behalf of the joint venture). This court finds that the use of Price/CIRI's name was not inadvertent.

Thus, the claims were not properly certified pursuant to the Contract Disputes Act, 41 U.S.C. § 605(c)(1), at the time they were presented to the contracting officer. Accordingly, this court grants defendant's motions to dismiss the complaints without prejudice.

*Substitution of Real Party in Interest*

Plaintiff moves to substitute HCP as the real party in interest. In response, defendant questions the validity of the contract assignment to HCP and HCP's privity of contract with the United States.

Since Price/CIRI's complaints must be dismissed, the court refrains from addressing these issues and denies plaintiff's motions. The court suggests that the parties attempt to resolve these issues at the administrative level and determine the proper entity or entities to maintain suit in this court.

*Defendant's Counterclaim*

■ Defendant asserts a counterclaim against Price/CIRI in the amount of $5,000 on the Wainwright contract. This amount represents the government's cost of replacing the ruptured steam valve. The contracting officer's final decision awarded $5,000 to the government. Subsequently, the Corps acted unilaterally to modify the contract, crediting the Corps in this amount. Plaintiff claims that the valve rupture was not its fault and that the $5,000 unilateral modification should be cancelled.

> Since the court lacks jurisdiction over plaintiff's claim set forth in the complaint because of improper certification of said claim, the court has no jurisdiction over the counterclaim asserted by defendant in response to said complaint.

*Universal Coatings/Won Ill Co. v. United States*, 24 Cl.Ct. 241, 248 n. 4 (1991) (citing *Somali Dev. Bank v. United States*, 205 Ct.Cl. 741, 751–52, 508 F.2d 817, 822 (1974); *Joseph Morton Co. v. United States*, 3 Cl.Ct. 780, 783 (1983), *aff'd*, 757 F.2d 1273 (Fed.Cir.1985). Consequently, the court dismisses defendant's counterclaim without prejudice.

### CONCLUSION

For the foregoing reasons, this court grants defendant's motions to dismiss and denies plaintiff's motions to substitute the real party in interest. Plaintiffs' complaints and defendant's counterclaim are dismissed without prejudice. The clerk is directed to enter judgment accordingly. No costs.

---

1. The Dissolution Agreement forbade further use of Price/CIRI's name. By a resolution of its board of directors on April 23, 1992, CCC attempted to ratify HCP's use of the name and accord HCP the authority to certify claims under the Contract Disputes Act. This court finds that CCC's *post facto* ratification is ineffective to establish the validity of Nason's certification. *KDH Corp. v. United States*, 23 Cl.Ct. 34, 43 (1991) (stating that "[t]he contractor should not be permitted to either elude or establish the validity of its certification by new evidence created after the date on which certification was made").